[Civ. No. 33721. First Dist., Div. Four. Dec. 9, 1974.]

Guardianship of the Person and Estate of HOLLY DIANE KEMP, an Incompetent Person.
JOSEPH L. KEMP, as Guardian, etc., Petitioner and Respondent, v. HOLLY DIANE KEMP, Objector and Appellant.

**COUNSEL**

Charles Marson, Joseph Remcho, Peter E. Sheehan and Deborah Hinkel for Objector and Appellant.

William T. Hoffman for Petitioner and Respondent.

## OPINION

**EMERSON, J.**\*—This appeal presents, for the first time in California, the question: Has the superior court, sitting in probate,[1] jurisdiction to order a guardian to consent to the involuntary sterilization of an adult incompetent ward? ▮ We conclude that it has not.

Respondent filed a petition seeking his appointment as the guardian of his adult daughter [appellant], on the ground that she was incompetent. The probate court, finding that appellant was an incompetent person, appointed respondent guardian of her person and estate. He duly qualified as such.

Thereafter respondent filed, in the probate court, a petition which he denominated "Guardian's Petition for Guidance and Directions under the Chancery Powers of the Court in re Therapeutic Sterilization. (Prob. Code 1400)." The petition alleged in substance that respondent had been informed by experienced, licensed medical practitioners as follows:

a. that appellant was capable of engaging in sexual activities, but was mentally unable to understand the results and implications of such activity;

b. that the pregnancy of appellant would be an "obvious probable result" of such activity;

c. that pregnancy would probably result in appellant's reconfinement to a state hospital; that the mental deficiencies of appellant might be transmitted to any child born her; and that appellant's family and/or the general public would be charged with the cost of supporting and maintaining said child.

After a hearing, the probate court found on the basis of the evidence submitted that the health of Holly Kemp would be severely impaired if she became pregnant; that the use of an intra-uterine device was medically contraindicated; and that the taking of birth control pills had adversely affected appellant's health.

The court then authorized and directed respondent to consent to the performance of "a therapeutic sterilization" upon the person of his ward. This appeal is from the order.

Respondent recognizes, as did the trial judge, that the authority for the questioned order, if it exists, must be found in the exercise by the probate

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]The superior court, when so sitting, will hereinafter be referred to as the probate court.

court of its residual chancery powers under the provisions of Probate Code section 1400. The section reads: "A guardian is a person appointed to take care of the person or property of another. The latter is called the ward of the guardian. The relation of guardian and ward is confidential, and is subject to the provisions of law relating to trusts. In the management and disposition of the person or property committed to him, a guardian may be regulated and controlled by the court." (Prob. Code, § 1400.)

Under California Constitution (art. VI, § 5), superior courts have jurisdiction of all probate matters. (*Wood* v. *Roach* (1932) 125 Cal.App. 631, 634 [14 P.2d 170].) ■ Hence, the "probate court" is merely a department of the superior court exercising such jurisdiction. (*Schlyen* v. *Schlyen* (1954) 43 Cal.2d 361, 375 [273 P.2d 897].) Although the superior court sitting in probate is a court of general jurisdiction, its jurisdiction and powers are wholly statutory. Thus, it is sometimes referred to as a court of limited jurisdiction, since it must look to express statutory authorization for its powers and procedure: " '[T]he proceedings being statutory in their nature, the court has no other powers than those given by statute and such incidental powers as pertain to it and enable the court to exercise the jurisdiction conferred upon it, and can only determine those questions or matters . . . which it is authorized to do. Thus, in the exercise of the powers conferred upon it, its jurisdiction is limited and special, or limited and statutory.' " (*McPike* v. *Superior Court* (1934) 220 Cal. 254, 258 [30 P.2d 17].)

■ The probate court has exclusive jurisdiction of guardianship proceedings, and after a guardian has been appointed, the court has continuing jurisdiction over the guardian and the administration of the ward's affairs. (*Browne* v. *Superior Court* (1940) 16 Cal.2d 593, 598 [107 P.2d 1, 131 A.L.R. 276].)

It has been suggested that the probate court is vested with the same jurisdiction over the persons of incompetents as was vested at common law in the court of chancery. (Condee, Cal. Practice (1964) Probate Court Practice, § 2213, pp. 292-294.) At common law, the King as *parens patriae* was deemed to be entrusted with the care of all persons unable to care for themselves, and such care was exercised by the chancery court. (*Fox* v. *Minor* (1867) 32 Cal. 111, 116; see also *Lord* v. *Hough* (1869) 37 Cal. 657, 660-661.) The Probate Code provides that a guardian may be controlled by the court in the management and disposition of the ward. (Prob. Code, § 1400.) The court in *Guardianship of Reynolds* (1943) 60 Cal. App.2d 669, 673-674 [141 P.2d 498], regarded this provision as merely a modern restatement of Blackstone's Commentaries, i.e., as a statutory

codification of the common law. Under this analysis, the probate court has the authority " '[to act]' for and on behalf of the child, [the] paramount consideration [being] the interest and welfare of the child.' " (*Guardianship of Reynolds, supra,* at p. 675.)

Although the probate court in exercising its jurisdiction in guardianship matters may be said to have powers analogous to those of chancery, it has been stated that the probate court has no general equity jurisdiction. (*Security-First Nat. Bk.* v. *Superior Court* (1934) 1 Cal.2d 749, 757 [37 P. 2d 69].) Its jurisdiction is limited in that it has "only those powers which are granted by statute and such incidental powers, legal and equitable, as enable it to exercise the powers granted." (*Estate of Muhammad* (1971) 16 Cal.App.3d 726, 731 [94 Cal.Rptr. 856].) Assuming that under the reasoning of the *Reynolds* case, the probate court in the exercise of its continuing jurisdiction over a guardianship has authority by virtue of Probate Code section 1400 to issue instructions providing for the mental and physical welfare of an incompetent person, it must be determined whether a judgment of a probate court ordering a sterilization operation to be performed upon the person of an incompetent is within the limits of such jurisdiction. The trial judge in the instant case found authority for his order "in the exercise of its residual chancery powers under the provisions of California Probate Code section 1400." Appellants contend that if such a power exists, it does not extend to involuntary sterilization.

There does not appear to be any case law in California supporting the proposition that a probate court may order the sterilization of a mentally incompetent ward. There is no statute in California which specifically confers such authority upon the probate court. The Welfare and Institutions Code does provide for the sterilization of certain mentally disordered or mentally retarded persons, but only after the individual has been committed to a state mental hospital and only under specified conditions. (Welf. & Inst. Code, § 7254.)

This statute is not exclusive, in that it applies only to persons previously committed to state mental hospitals.

It is noteworthy, however, that the predecessor of Welfare and Institutions Code section 7254 (Stats. 1913, ch. 363, § 3, p. 776) at one time permitted the sterilization of adult "idiots" and "fools" upon the written request of parent or guardian (Stats. 1913, ch. 363, § 3, p. 776), but that provision was repealed in 1937 (Stats. 1937, ch. 369, § 6624, p. 1155). It may reasonably be suggested that it would be a misreading of legislative history to infer that by repealing the above provision the Legislature intended to vest the power to sterilize "fools" and "idiots" in the probate

courts. ■ In view of the fact that the Legislature has prescribed a comprehensive scheme requiring examination, notice, administrative hearings, administrative review, and judicial review, it may be concluded that the Legislature did not intend that sterilization of the mentally retarded was to be carried out without meeting the requirements imposed by this statute. (Welf. & Inst. Code, § 7254.) See also *Smith* v. *Command* (1925) 231 Mich. 409 [204 N.W. 140, 146], where the court in applying a similar Michigan statute stated "[t]he requirements of the statute . . . are jurisdictional, and no valid order can be made without a substantial compliance with them."

The only California authority supporting the proposition that a sterilization decree is not dependent upon statutory authorization and is within the discretionary powers of the court lies in the area of criminal law. In *People* v. *Blankenship* (1936) 16 Cal.App.2d 606 [61 P.2d 352], the defendant had been convicted of raping a 13-year-old girl. Both the defendant and the girl were syphilitic, but there was no evidence that the defendant had infected the girl. The trial court required that the defendant undergo a vasectomy as a condition of probation. This order was affirmed on appeal. In *People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 627-629 [64 Cal.Rptr. 290], however, the appellate court viewed *Blankenship* as a "most extreme case . . . the authority of which is dubious today," and held that a condition of probation requiring sterilization was void.

In view of the dearth of California case law on the subject in question, we find authorities from other jurisdictions to be of interest. Only one case has been found where a sterilization order was made under the discretionary powers of a probate court without express statutory authorization. In *In re Simpson* (1962) 88 Ohio L.Abs. 193 [180 N.E.2d 206], the mother of a mentally retarded 18-year-old girl filed an affidavit in the Ohio probate court, alleging that her daughter was feeble-minded and had been sexually promiscuous. The judge ordered that the young woman submit to a sterilization operation, finding such operation necessary for her health and welfare. (*In re Simpson, supra,* at p. 208.) The authority for this order was derived from Ohio statutes which provided that when institutions for the feeble-minded were overcrowded, the probate judge should " 'take such action and make such order as he deems necessary . . . to provide for the . . . care, and maintenance of . . . feeble-minded person.' " (*In re Simpson, supra,* at p. 207.) The court also found authority for its order in Ohio legislation providing that the probate court shall have "plenary power at law and in equity fully to dispose of any matter . . . before the court . . ." unless the power is expressly otherwise limited or denied by statute. (*In re Simpson, supra,* at p. 207.) The court also noted

that the Circuit Court of Baltimore, Maryland, in an unpublished memorandum opinion had held that such an order could be made under general equity powers of the court. This is the only case cited by the *Simpson* court directly in support of its order. (*In re Simpson, supra,* at p. 208.)

The *Simpson* case apparently was not appealed. That it is of dubious persuasive or precedential value, however, may be inferred from a subsequent federal case involving the same judge. (*Wade* v. *Bethesda Hospital* (S.D. Ohio 1971) 337 F.Supp. 671, motion for reconsideration den., 356 F.Supp. 380.) The *Wade* case concerned an action for civil rights violation and assault and battery brought by a mentally retarded girl who had been sterilized pursuant to a court order. The judge, the doctors who had performed the operation, and the hospital were named as defendants, together with the county children's services board in whose custody plaintiff had been placed at the time of the order. The judge moved for summary judgment on the ground of judicial immunity. This motion was denied by the federal district court, which held that the judge in authorizing sterilization had acted wholly without jurisdiction.

The sterilization order had, as in the *Simpson* case, been based upon Ohio statutes authorizing the probate court to take any actions deemed necessary for the care of mentally retarded persons, and providing that the probate court has plenary power at law and equity to dispose of any matter properly before it. The federal court stated that: "It is the determination of this Court that neither of these sections provided the defendant Gary with the authority to order plaintiff to submit to sterilization. There is no statute in Ohio which authorizes a judge to order sterilization for any purpose. Nor has this Court been able to discover any judicial precedent for such an order in the absence of a specific statute. The Court does note that this plaintiff is not the first individual whom defendant Gary has ordered to submit to sterilization. See, In re Simpson, 180 N.E.2d 206 (Probate Ct., Muskingum County, Ohio, 1962).

"Indeed, in the only case where an appellate court has considered the possibility of sterilization in the absence of specific statutory authorization, the court affirmed the lower court judgment which concluded that sterilization was not within the general equity power of the court and that it was a matter to be dealt with by the legislature. Holmes v. Powers, Civ. No. 4151 (Cir.Ct., Whitley Cty., Ky., 1968), affirmed, Ky. 439 S.W.2d 579 (Ct.App.Ky., 1968)."[2]

---

[2]*Holmes* v. *Powers* involved an action by a county health officer and local medical society for a declaratory judgment that they could sterilize a 35-year-old mentally

In the Ohio cases, the probate court based its orders upon statutory grants of jurisdiction considerably broader than those found in the comparable California statutes. Probate Code section 1400 merely provides that the probate court has the authority to control and regulate the guardian in the management and disposition of the person or property of the ward; the court also has incidental legal and equitable powers necessary to enable it to exercise the powers granted by statute. (*Estate of Muhammad, supra,* 16 Cal.App.3d 726 at p. 731.) The federal district court held that the action of the Ohio probate court in ordering sterilization was not merely in excess of jurisdiction, but was without jurisdiction. (*Wade* v. *Bethesda Hospital, supra,* 337 F.Supp. 671 at p. 674.) California probate courts have not been given the extensive jurisdiction over the persons of incompetents that the Ohio Legislature has granted its probate courts. Therefore, under the reasoning of the *Wade* case, it is clear that the order of the probate court in the instant case, ordering that the guardian consent to the sterilization of his ward, should be deemed to be in excess of jurisdiction.

In view of the conclusion that the order in this case should be reversed on the grounds discussed above, the remaining issues raised by appellant need not be considered.

The order is reversed.

Caldecott, P. J., and Rattigan, J., concurred.

retarded woman without civil or criminal liability to themselves. The appellate court affirmed the trial court's decision that such an operation could not legally be performed.