Linda Kay SPARKMAN and Leo
Sparkman, Plaintiffs-Appellants,

v.

Ora E. McFARLIN et al.,
Defendants-Appellees.

No. 76–1706.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1977.
Decided March 23, 1977.

Richard H. Finley, Kendallville, Ind., for plaintiffs-appellants.

Carl J. Suedhoff, Jr., George E. Fruechtenicht, J. A. Bruggeman, William F. McNagny, Fort Wayne, Ind., for defendants-appellees.

Before SWYGERT and WOOD, Circuit Judges, and EAST, Senior District Judge.*

SWYGERT, Circuit Judge.

The question on appeal is whether a state court judge who ordered the sterilization of a fifteen-year-old girl is judicially immune from liability under the federal civil rights statutes. We hold that the judge acted extrajudicially and that the doctrine of judicial immunity is inapplicable to this case. The district court's judgment of dismissal of the complaint is reversed.

I

In 1971 defendant Ora E. McFarlin sought a court order to have her fifteen-year-old daughter Linda Sparkman, plaintiff, sterilized. Defendant Warren G. Sunday, an attorney, prepared the "Petition to Have Tubal Ligation Performed on a Minor and Indemnity Agreement." The petition contained an affidavit by McFarlin which stated that Linda was "somewhat retarded" although she attended public schools and had been "passed along with other children in her age level." McFarlin further alleged that, without her knowledge or consent, Linda had begun dating and staying overnight with older youths and men, and that she could not maintain a continuous observation over Linda to "prevent unfortunate circumstances." The petition was presented to defendant Judge Harold D. Stump of the Circuit Court of DeKalb County, Indiana, who issued the requested order in an ex parte proceeding. No guardian ad litem was appointed to represent Linda's interests and no hearing was held. Linda received no notice of the petition, and neither the petition nor the order was ever filed in the DeKalb County Circuit Court.

After Judge Stump had signed the order, Linda was taken to the DeKalb Memorial Hospital, and a tubal ligation was performed by defendant John H. Hines, M.D. Defendant Harry M. Covell, M.D., assisted in the operation and defendant John C. Harvey, M.D., was the anaesthesiologist. Linda was not informed of the true consequences of the surgery; in fact, she was told that the purpose of the hospital visit was to have her appendix removed.

In 1973 Linda married plaintiff Leo Sparkman. Two years later she learned for the first time (from Dr. Hines) that she had been sterilized. The couple brought an action seeking damages under 42 U.S.C. §§ 1983 and 1985(3), contending that the actions of the defendants in sterilizing her or causing her to be sterilized violated her constitutional rights. She attached pendent state claims for assault and battery and medical malpractice. Leo Sparkman assert-

---

* Senior District Judge William G. East of the District of Oregon is sitting by designation.

ed a pendent claim for loss of potential fatherhood.

The district court granted defendants' motions to dismiss the federal claims. It found that the only state action present, necessary to the federal claims, was the approval of the petition by Judge Stump. It then held that Judge Stump was "clothed with absolute judicial immunity" so that neither he nor any of the other defendants, alleged to be coconspirators were liable under sections 1983, 1985(3) or the Fourteenth Amendment. The remaining state claims were dismissed for lack of subject matter jurisdiction as they were pendent to the federal causes of action.

## II

■ The doctrine of judicial immunity was adopted by the Supreme Court in *Bradley v. Fisher,* 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871), and was held applicable to actions brought under 42 U.S.C. § 1983 in *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 1288 (1967). Its purpose is to permit judges to exercise their judicial function independently, without fear of civil liability. It is available even where malicious or corrupt action on the part of a judge is alleged.

■ Judicial immunity is available, however, only where the judge has jurisdiction. *Bradley v. Fisher, supra; Pierson v. Ray, supra.* The jurisdiction required by *Bradley* is that over the subject-matter; that is, the power of a court to hear and decide a

cause of action before it. Although immunity exists when jurisdiction is present even though the judge acts in excess of that jurisdiction, it is not available when he acts in "clear absence of all jurisdiction." *Bradley,* 80 U.S. at 351. Thus, the crucial issue here, upon which immunity turns, is whether Judge Stump acted within his jurisdiction when he approved the petition to have Linda Sparkman sterilized.

In approving the petition, Judge Stump cited no statutory or common law authority under which he was purporting to act.[1] Moreover, counsel has not during the course of this litigation cited any specific statutory or common law basis under which a court can order the sterilization of a child simply upon the petition of a parent.

■ Defendant Stump rests his argument that he had jurisdiction in this case on Indiana Code 33–4–4–3, which is a general grant of jurisdiction to the circuit courts.[2] It confers original jurisdiction "in all cases at law and in equity . . . ." Although this grant of juridical power is broad, we cannot accept the assertion that it cloaks an Indiana circuit judge with blanket immunity. He may not arbitrarily order or approve anything presented to him in the form of an affidavit or petition. A claim must be characterized as a case in law or equity in order to come within the statute. In short, it must have a statutory or common law basis.

■ We agree with plaintiffs, based on an independent examination of Indiana law,

1. His order, dated the same day as the petition, reads:

   I, Harold D. Stump, Judge of the DeKalb Circuit Court, do hereby approve the above Petition by affidavit form on behalf of Ora Spitler McFarlin, to have Tubal Ligation performed upon her minor daughter, Linda Spitler, subject to said Ora Spitler McFarlin covenanting and agreeing to indemnify and keep indemnified Dr. John Hines and the DeKalb Memorial Hospital from any matters or causes of action arising therefrom.

2. Indiana Code 33–4–4–3 provides:

   *Jurisdiction.*—Said court shall have original exclusive jurisdiction in all cases at law and in equity whatsoever, and in criminal cases an action for divorce, except where exclusive

or concurrent jurisdiction is, or may be conferred by law upon justices of the peace. It shall also have exclusive jurisdiction of the settlement of decedent's estates and of guardianships: Provided, however, that in counties in which criminal or superior courts exist or may be organized, nothing in this section shall be construed to deprive such courts of the jurisdiction conferred upon them by laws, and it shall have such appellate jurisdiction as may be conferred by law, and it shall have jurisdiction of all other causes, matters and proceedings where exclusive jurisdiction thereof is not conferred by law upon some other court, board or officer. [Acts 1881 (Special Session), Chapter 24, Section 3, page 102.]

that there was no statutory authority for Judge Stump's actions. The statutory scheme in existence at the time in fact negated his right to assert any jurisdiction over the petition. In 1971 Indiana Code sections 16–13–13–1 through 16–13–13–4 were in effect.[3] These statutes authorized sterilization of institutionalized persons under certain circumstances. Those circumstances involve specific procedures to be followed, including the right to notice, opportunity to defend, and the right to appeal. This statutory scheme clearly negates jurisdiction to consider sterilization in cases not involving institutionalized persons and in which these procedures are not followed. *See Kemp v. Kemp,* 43 Cal.App.3d 758, 118 Cal.Rptr. 64 (1974); *Smith v. Command,* 231 Mich. 409, 204 N.W. 140, 146 (1925).

■ In addition, jurisdiction for a court to order sterilization cannot be found in the common law of Indiana. It is argued on behalf of the defendants that the Indiana Court of Appeals implied that such jurisdiction exists in *A. L. v. G. R. H.,* 325 N.E.2d 501 (Ind.Ct.App.1975). Aside from the fact that *A.L.* was decided after Judge Stump acted, it undercuts rather than supports his

position. The court in *A.L.* affirmed the trial court's denial of a declaratory judgment authorizing a parent to consent to the sterilization of a minor child. If the opinion implies anything, it is that no jurisdiction to order sterilizations exists. This view is supported by the fact that the cases cited by the *A.L.* court all held that, in the absence of express statutory authority, courts lack the power to order sterilizations.[4]

Moreover, the defendants can derive no comfort from the common law of other states. In general, courts have refused to order the extreme remedy of sterilization absent specific legislative authority, holding that it was not within their common law powers. *See Holmes v. Powers,* 439 S.W.2d 579 (Ky.Ct.App.1968); *Frazier v. Levi,* 440 S.W.2d 393 (Tex.Ct.Civ.App.1969); *In Interest of M. K. R.,* 515 S.W.2d 467 (Mo.1974); *Kemp v. Kemp, supra.*[5]

■ Given the fact that the purported judicial action of defendant Stump had no support in statute or previous common law, Judge Stump could only claim to be acting lawfully if the remedy of sterilization that he imposed was a valid exercise of the

---

**3.** Indiana Code 16–13–13–1 provides:

*Authorization.*—Whenever the superintendent of any hospital or other institution of this state, or of any county in this state, which has the care or custody of insane, feeble-minded or epileptic persons, shall be of the opinion that it is for the best interests of the patient and of society that any inmate of the institution under his care should be sexually sterilized, such superintendent, if a lawfully licensed physician and surgeon, is hereby authorized to perform, or cause to be performed by some capable physician or surgeon, an operation or treatment of sterilization on any such patient confined in such institution afflicted with hereditary forms of insanity that are recurrent, epilepsy, or incurable primary or secondary types of feeble-mindedness: Provided, That such superintendent shall have first complied with the requirements of this act [16–13–13–1 – 16–13–13–6.]

Section 16–13–13–2 sets out the procedures to be taken in such a case. Section 16–13–13–3 and section 16–13–13–4 provide for appeals.

**4.** *Frazier v. Levi,* 440 S.W.2d 393 (Tex.Ct.Civ.App.1969); *Holmes v. Powers,* 439 S.W.2d 579 (Ky.Ct.App.1968); *In Interest of M. K. R.,* 515

S.W.2d 467 (Mo.1974); *Kemp v. Kemp,* 43 Cal. App.3d 758, 118 Cal.Rptr. 64 (1974).

**5.** In some of these cases the facts which might have warranted sterilization were quite compelling, which cannot be said of those in the instant case. For example, in *Frazier v. Levi, supra,* the subject was an adjudged incompetent woman, 34 years old with the mentality of a six-year-old. She was the ward of her parents, who were also supporting her two illegitimate children, both retarded. The parents claimed that they could not bear the economic burden of any more children. The court found it could not authorize sterilization absent statutory or constitutional authority.

The only recent case permitting such action by a court without specific statutory authority was *In re Simpson,* 180 N.E.2d 206 (Ohio Prob. 1962). In that case, statutory authority was found by construing a section providing that when mental institutions were overcrowded, a probate judge could take such action as he deems necessary for the health and welfare of the feeble-minded. The validity of that decision is questionable, however, considering the subsequent decision in *Wade v. Bethesda Hospital,* 337 F.Supp. 671, 356 F.Supp. 380 (S.D. Ohio 1971, 1973).

power of courts to fashion new common law.[6] We hold that it was not. Although courts ought not to be discouraged from creating innovative legal remedies to meet changing social conditions, they may not use the power to create new decisional law to order extreme and irreversible remedies such as sterilization in situations where the legislative branch of government has indicated that they are inappropriate. If we were to say that jurisdiction existed to order sterilization without adherence to the requirements of institutionalization and procedural due process mandated by the Indiana legislature, we would be sanctioning tyranny from the bench. There are actions of purported judicial character that a judge, even when exercising general jurisdiction, is not empowered to take.[7]

■ Even if defendant Stump had not been foreclosed under the Indiana statutory scheme from fashioning a new common law remedy in this case, we would still find his action to be an illegitimate exercise of his common law power because of his failure to comply with elementary principles of procedural due process. Here a juvenile was ordered sterilized without the taking of the slightest steps to ensure that her rights were protected. Not only was the plaintiff not given representation, she was not even told what was happening to her. She was afforded no opportunity to contest the validity of her mother's allegations or to have a higher court examine whether the substance of those allegations, even if true, warranted her sterilization. Finally, the petition and order were never filed in court. This kind of purported justice does not fall within the categories of cases at law or in equity.

Thus, Judge Stump's action had no basis either in law or in equity and was therefore taken without jurisdiction. In the absence of jurisdiction, a judge is not entitled to judicial immunity in a suit for damages that resulted from his action.

The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.

---

6. This claim was never asserted in defendants' briefs or at oral argument.

7. There are other examples of extreme and unauthorized remedies not distinguishable from the present case. If Judge Stump were said to be acting validly under the power of courts to create new common law, a judge of general jurisdiction could order, upon an affidavit and petition similar to the one in the instant case, that a United States citizen should be disenfranchised because he is "un-American." Clearly such a remedy would be beyond the judge's general jurisdiction.