MICHIGAN PROTECTION AND ADVO-CACY SERVICE, individually and on behalf of Lynn Dybdahl and all others similarly situated, Plaintiff,

v.

John N. KIRKENDALL, Washtenaw County Probate Judge, Doris Dybdahl and Gerald Dybdahl, Defendants.

Civ. A. No. 93–75011.

United States District Court,
E.D. Michigan, S.D.

Dec. 9, 1993.

Calvin A. Luker, David M. Stokes, Michigan Protection & Advocacy Service, Livonia, MI, for Michigan Protection Advocacy Service.

Paul D. Reingold, Nicholas J. Rine, Mark D. Mitshkun, Michigan Clinical Law Program, Ann Arbor, MI, for Gerald Dybdahl.

Curtis N. Hedger, Robert E. Guenzel, Harris, Guenzel, Meier & Nichols, PC, Ann Arbor, MI, for John N. Kirkendall.

### OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION

GADOLA, District Judge.

On November 29, 1993, plaintiff Michigan Protection and Advocacy Service ("MPAS") applied for and was granted a temporary restraining order. Plaintiff also filed on that date a complaint seeking declaratory and equitable relief. Defendants Doris and Gerald Dybdahl ("the Dybdahls") filed a respon-

sive pleading December 2, 1993. A hearing was held December 3, 1993 at which counsel for all parties were present.

## I. Facts

Under Mich.Comp.Laws Ann. § 330.1931, 42 U.S.C. § 6001, et seq., 42 U.S.C. § 10801, et seq., and 29 U.S.C. § 794e, the plaintiff is an agency designated by the State of Michigan and the federal government, to implement a program for the protection and advocacy of the rights of persons with developmental disabilities and persons afflicted with mental illnesses. The plaintiff is authorized by these statutes to pursue legal, administrative, and other appropriate remedies to protect the rights of mentally ill and developmentally disabled persons and to investigate allegations of abuse or neglect. Mich.Comp. Laws Ann. § 330.1931, 42 U.S.C. § 6042(a)(2)(A)(i), 42 U.S.C. § 10805(a)(1)(B), and 29 U.S.C. § 794e(f)(3).

Lynn Dybdahl is a 44–year old female institutionalized at Northville Regional Psychiatric Hospital. She has a history of mental illness dating back 30 years and has lived in various mental health treatment facilities during that time. According to the pleadings, she has been diagnosed with schizophrenia and organic brain disorder. She has been deaf since the age of 1 and is conversant in American sign language.

In 1991, the Dybdahls were appointed to act as limited co-guardians for their daughter, Lynn Dybdahl, with powers over medical and placement decisions. This appointment arose out of the need for informed consent for a bronchoscopy, an invasive test for tuberculosis and sarcoidosis recommended for her by the pulmonary clinic at University of Michigan Hospital.

Lynn Dybdahl was on birth control pills from her teenage years until March 1993. Within the past year, she developed thrombophlebitis, a blood-clotting condition which could be aggravated by the birth control pill. Because Lynn Dybdahl reportedly is sexually active, an alternative form of birth control is necessary if pregnancy is to be avoided. The Dybdahls contend that any birth control method which requires self-examination or self-application must be ruled out. Since ceasing to take the birth control pills, Lynn Dybdahl has been constantly supervised and at times physically restrained in order to prevent her from engaging in sexual activity.

On July 21, 1993, the Dybdahls filed a pro se petition with the Washtenaw County Probate Court, the Honorable John N. Kirkendall presiding, seeking authorization as Lynn's guardians to consent to a tubal ligation of Lynn. The Dybdahls sought such relief because they were advised by an unknown source that Medicare would not pay for the operation without the court's authority; the Dybdahls do not have the financial means to pay for the operation themselves. Judge Kirkendall appointed attorney Edward Koster to represent Lynn Dybdahl.

Judge Kirkendall treated the Dybdahls' petition as a "petition for instructions on the scope of a guardian's authority." In the Matter of Lynn Dybdahl, No. 91–97388–GD (Washtenaw County Probate Ct., Kirkendall, J.N., filed Nov. 29, 1993) at 2. On October 4, 1993, pursuant to a September 28, 1993 meeting in chambers, Judge Kirkendall entered a two-paragraph order which held that

under the laws of Michigan, the Guardians are authorized to make any medical decision in the best interest of their ward. This includes consenting to a tubal ligation.

The order cites to no legal authority, statutory or otherwise, in support of this proposition.

Following entry of this order, the MPAS filed motions seeking rehearing and reconsideration of the court's order, seeking to intervene on behalf of Lynn Dybdahl and others similarly situated, and seeking to replace Koster as counsel for Lynn Dybdahl. MPAS, within those motions, represented to Judge Kirkendall that MPAS spoke with Lynn Dybdahl, with Koster's permission, on two occasions. On both occasions, Lynn Dybdahl indicated to them through a sign interpreter that she does not want to be sterilized. Koster, in response to the motion to replace him, moved the state court to appoint a guardian ad litem to recommend to the court whether it is in the best interest of Lynn Dybdahl to have Koster replaced by MPAS. At a hearing held November 9, 1993, Judge Kirkendall denied all pending

motions; the written opinion, cited *supra,* was issued November 29, 1993. In that opinion, Judge Kirkendall states that he treats all of the motions of MPAS collectively as a single motion to have Edward Koster replaced by MPAS. Because MPAS does not allege that Koster is ineffective or has a conflict of interest, Judge Kirkendall denies the motion to replace Koster as counsel. Judge Kirkendall addresses MPAS's claim that Lynn Dybdahl's wishes are not being properly considered and its request to intervene on behalf of others similarly situated by stating that

> the issue of Ms. Dybdahl's possible disagreement was not before the court. The court did not decide what rights Ms. Dybdahl might have upon proper objection, or whether the guardians could necessarily supersede the wishes of Ms. Dybdahl. The court did not decide what standard the guardian should use—best interests or substituted judgment—in authorizing medical treatment. As to the class of individuals who have a severe mental disability, the October 4 order creates no precedent constituting a denial of due process rights.

> If Ms. Dybdahl is able to express her wishes, and she if [sic] disagrees with the guardian's proposed decision, she has an avenue to put her objection before the court. MCLA 700.447. Should Ms. Dybdahl or someone interested in her welfare seek modification of the terms of the guardianship through petition or informal letter, Ms. Dybdahl would be entitled to the full panoply of procedural rights, including an evidentiary hearing.

*In the Matter of Lynn Dybdahl, supra,* at 4.

The complaint filed with this court by MPAS on November 29, 1993 seeks, *inter alia,* equitable relief under 42 U.S.C. § 1983 enjoining the Dybdahls from authorizing any involuntary permanent sterilization procedure to be performed on Lynn Dybdahl without there first being held a full due process hearing. The complaint also seeks, *inter alia,* equitable relief permanently enjoining Judge Kirkendall "from authorizing the involuntary sexual sterilization of legally incapacitated persons without following the Due Process required by the Fourteenth Amendment of the United States Constitution."

## II. Standard of Review for Preliminary Injunctions

The decision of whether or not to issue a preliminary injunction lies within the discretion of the district court. *CSX Transp., Inc. v. Tennessee State Bd. of Equalization,* 964 F.2d 548, 552 (6th Cir. 1992). When determining whether to issue a preliminary injunction, a district court should address four factors:

i. the plaintiff's likelihood of success on the merits of the action;

ii. the irreparable harm to plaintiff that could result if the court does not issue the injunction;

iii. whether the interests of the public will be served; and

iv. the possibility that the injunction would cause substantial harm to others.

*Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 262 (6th Cir.1987); *In re DeLorean Motor Co.,* 755 F.2d 1223 (6th Cir.1985); *Mason County Medical Ass'n v. Knebel,* 563 F.2d 256 (6th Cir.1977).

## III. Analysis

### i. The Likelihood of Success on the Merits of the Action.

Central to plaintiff's action are two issues: (1) whether defendant Kirkendall violates the due process rights of Lynn Dybdahl by authorizing her guardians to consent to her sterilization without first conducting an evidentiary hearing; and (2) whether defendants Dybdahls would violate Lynn Dybdahl's constitutional rights by authorizing her sterilization without her consent and without there having been any evidentiary hearing to protect her rights. Resolution of these issues depends upon the single issue of whether the guardian of a legally incompetent person may be authorized, without violating the incompetent's rights under the United States Constitution, to consent to the sterilization of the incompetent without there first being an evidentiary hearing to determine whether the sterilization is medically necessary and whether and for what reason the incompetent objects to the procedure.

The right of procreation is a fundamental constitutional right protected by the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *Avery v. County of Burke*, 660 F.2d 111, 115 (4th Cir.1981). Irrevocably terminating a patient's ability to bear children without her consent constitutes a deprivation of that fundamental constitutional right. *Downs v. Sawtelle*, 574 F.2d 1, 11 (1st Cir.1978). In the instant case, the court must consider whether and under what circumstances a guardian may substitute his or her consent to a sterilization, for the consent of the incapacitated person. Under Mich.Comp.Laws Ann. 700.455,

> (1) *A guardian of a legally incapacitated person has the same powers, rights, and duties respecting the guardian's ward that a parent has respecting the parent's unemancipated minor child....* In particular and without qualifying the foregoing, a guardian has the following powers and duties, except as modified by order of the court:
>
> \* \* \* \* \* \*
>
> (c) A guardian may give consent or approval that may be necessary to enable the ward to receive medical or other professional care, counsel, treatment, or service.

(emphasis added). Thus, in order to determine what are the powers, rights, and duties of the guardian of a legally incapacitated person, the court must look to laws of Michigan addressing the powers, rights, duties of a parent over his or her unemancipated minor child.[1] Unfortunately, this court can find no Michigan law addressing whether and under what circumstances parents may authorize the sterilization of their minor child. Mich.Comp.Laws Ann. 700.431, addressing guardians of minor children, however, offers some guidance. The statute, which gives guardians of minor children the same powers and responsibilities as parents, indicates that there are some legal limits on the decision-making powers of parents with respect to medical treatment. Section 431 provides

A guardian of a minor child has the powers and responsibilities of a parent.... A guardian has the following powers and duties:

> \* \* \* \* \* \*
>
> (c) The guardian shall ... authorize medical or other professional care, treatment, or advice. A guardian is not liable by reason of this consent for injury to the ward resulting from the negligence or acts of third persons *unless it would be illegal for a parent to have consented.*

Mich.Comp.Laws Ann. 700.431 (emphasis added). Thus, the court can infer from this language that Michigan law contemplates that the powers and rights of parents in regard to medical decisions are subject to legal limits.

Chapter 6 the Michigan Mental Health Code, entitled "Guardianship for the Developmentally Disabled," indirectly addresses the issue of sterilization of a guardian's ward in section 1629. Though not directly applicable to the case at bar because Lynn Dybdahl is not alleged to be developmentally disabled (i.e. mentally retarded) but rather mentally ill, the section and surrounding case law offers some instruction to the court on the issue of whether a guardian may authorize involuntary sterilization. The section provides

> (1) A guardian ... shall not be liable for civil damages by reason of authorizing routine or emergency medical treatment or surgery or *extraordinary procedures when previously ordered by the court* for his or her ward ...
>
> \* \* \* \* \* \*
>
> (3) Routine medical services do not include extraordinary procedures. *Extraordinary procedures includes, but is not limited to, sterilization,* including vasectomy, ...

Mich.Comp.Laws Ann. 330.1629 (emphasis added). This language indicates that the guardian of a developmentally disabled person may not legally authorize an extraordinary procedure such as sterilization without

---

1. It must be noted that, for purposes of this case, there is at least one critical difference between a guardian and a parent; that is, because the authority of a guardian derives from state law, a guardian necessarily acts under color of state law whereas a parent may not. Thus, the actions of a guardian may be held to violate 42 U.S.C. § 1983 where the actions of a parent might not.

an express order of the court. Furthermore, the issue of whether a probate judge has the jurisdiction (presumably even after an evidentiary hearing has been held) to authorize sterilization appears to be a question as yet unanswered by the Michigan courts. In the case of *In re Wirsing,* 441 Mich. 886, 495 N.W.2d 388 (1992), the Michigan Supreme Court remanded the case to the Michigan Court of Appeals to consider whether probate judges possess the power to authorize a guardian to consent to the sterilization of a developmentally disabled citizen. Further, it should be noted that "[i]n general, courts have refused to order the extreme remedy of sterilization absent specific legislative authority, holding that it was not within their common law powers." *Sparkman v. McFarlin,* 552 F.2d 172, 175 (7th Cir.1977), *rev'd sub nom., Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), *citing Holmes v. Powers,* 439 S.W.2d 579 (Ky.Ct. App.1968); *Frazier v. Levi,* 440 S.W.2d 393 (Tex.Ct.Civ.App.1969); *In Interest of M.K.R.,* 515 S.W.2d 467 (Mo.1974); *Kemp v. Kemp,* 43 Cal.App.3d 758, 118 Cal.Rptr. 64 (1974). This court can find no specific legislation authorizing Michigan courts to order involuntary sterilizations. Nevertheless, from the language of Mich.Comp.Laws Ann. 330.1629, it appears that Michigan law does contemplate courts' ordering sterilization as an extraordinary measure.

In light of the foregoing, Judge Kirkendall's ruling on the issue of the scope of the guardian's authority, that is, that

> under the laws of Michigan, the Guardians are authorized to make any medical decision in the best interest of their ward [including] consenting to a tubal ligation[,]

appears to this court to be an answer which begs the question; the question for Judge Kirkendall's court being whether a tubal ligation is in the best interest of Lynn Dybdahl. There appears to be no authority supporting the proposition that sterilization is a decision that the Michigan legislature has left to the discretion of the guardian; rather, sterilization is defined by the legislature as an extraordinary measure which is to be decided by a court and undertaken only pursuant to court order.

Furthermore, Judge Kirkendall's suggestion that Lynn Dybdahl's proper avenue of relief is by way of a challenge to the guardianship under Mich.Comp.Laws Ann. § 700.447, entitled "Removal or resignation of guardian; termination of incapacity," indicates that, in Judge Kirkendall's view, Lynn Dybdahl must prove herself legally competent and have her guardian removed in order to voice a legally cognizable objection to the proposed sterilization. As stated *supra,* it does not appear to this court that Michigan law strips an adjudged incompetent of every legal right; rather, an incompetent has the same rights vis-a-vis her guardian as an unemancipated minor child has vis-a-vis her parents. Under federal law, the mere fact that she has been adjudged incompetent and a guardian has been appointed does not deprive Lynn Dybdahl of all substantive liberty interests. *See Youngberg v. Romeo,* 457 U.S. 307, 315, 102 S.Ct. 2452, 2457–58, 73 L.Ed.2d 28 (1982) (addressing the rights of persons committed to psychiatric institutions). The proceeding that resulted in the appointment of Lynn Dybdahl's guardians was instituted for the purpose of obtaining consent to a bronchoscopy. At no time has the state court held a formal proceeding to address Lynn Dybdahl's constitutional right of procreation and the possible need, or lack thereof, for her permanent sterilization. "The Fourteenth Amendment does not cease protecting individuals simply because they are behind institutional gates." *Romeo v. Youngberg,* 644 F.2d 147, 160 n. 24 (3rd Cir.1980) (dealing with physical restraint of committed person).

This court renders no opinion as to the state of the Michigan law respecting guardians and the involuntary sterilization of a ward. However, as a matter of federal law, this court finds that the due process and equal protection clauses of the United States Constitution demand that any involuntary sterilization of Lynn Dybdahl or others similarly situated, occur only after a full evidentiary hearing has been held to determine the propriety of such an extreme measure in relation to the rights of the patient.

In the instant case, Judge Kirkendall's October 4, 1993 and November 29, 1993 orders

invest the guardians of Lynn Dybdahl with the authority to consent to her sexual sterilization. Because these orders were entered without any evidentiary hearing, this court believes that an involuntary sterilization of Lynn Dybdahl pursuant to these orders likely would violate her rights under the United States Constitution. Therefore, the court finds that plaintiff is likely to succeed on the merits of its case.

### ii. The Irreparable Harm to the Plaintiff.

■ There is no question that the harm to plaintiff would be irreparable. If plaintiff is sterilized in violation of her constitutional rights, no remedy will be capable of making her whole again.

### iii. The Interests of the Public.

■ This court finds that given the sordid history of sterilization of the mentally defective, the granting of a preliminary injunction in this case will best serve the interests of the public.[2]

> The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, whether that be executive, legislative, or judicial.

*Mitchum v. Foster*, 407 U.S. 225, 242, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972). By preserving the status quo of the parties at this point, this court ensures that the federal

rights of Lynn Dybdahl are not irreparably violated, and takes a step toward ensuring that others similarly situated likewise will not be deprived of their constitutional rights.

### iv. The Possibility of Substantial Harm to Others.

■ The court can identify no possibility of substantial harm to others.[3] The defendants may suffer inconvenience and delay in carrying out the sterilization but such does not constitute substantial harm sufficient to counterbalance the irreparable harm that involuntary sterilization would inflict upon Lynn Dybdahl.

### IV. Conclusion

For the foregoing reasons, the court finds that a preliminary injunction should issue for a minimum of thirty (30) days. During this time, the parties are directed to return to the Michigan state courts to further seek relief. At the termination of the thirty (30) day period, the parties shall report to this court what progress, if any, has been made toward ensuring that the federal rights of Lynn Dybdahl are protected.

### ORDER

Therefore, it is hereby **ORDERED** that plaintiff's motion for preliminary injunction is **GRANTED.**

It is further **ORDERED** that defendants Doris Dybdahl and Gerald Dybdahl are hereby **ENJOINED** from ordering, authorizing,

---

2. Sterilization has a sordid past in this country—especially from the viewpoint of the mentally retarded. In the early part of this century many states enacted compulsory sterilization laws as an answer to the problems and costs of caring for the misfortunate of society.

*In re Grady*, 85 N.J. 235, 426 A.2d 467, 472 (1981).

3. As expressed at the hearing on this matter, the court's only concern is that Lynn Dybdahl could become pregnant during the pendency of the preliminary injunction. Such event obviously would complicate matters further. Counsel for the guardians, however, assured the court that they are making every effort to prevent that event from occurring. Counsel also represented that the guardians are attempting to determine if there exists any means of birth control suitable

for Lynn Dybdahl other than permanent sterilization.

The Dybdahls' counsel argued that because the Dybdahls are presently investigating other non-permanent methods of birth control and do not intend to sterilize Lynn Dybdahl prior to the expiration of the two weeks following the December 3, 1993 hearing, the sterilization is not imminent and the preliminary injunction therefore should not issue. Counsel refused, however, to consent to the entry of a preliminary injunction. Without such, the Dybdahls are free by virtue of the state court order to consent at will to the sterilization of their daughter. ·This court finds that by seeking out and obtaining the state court's authorization and by refusing to consent to the terms of the preliminary injunction, the Dybdahls have evidenced an intent to carry out the procedure in the immediate future.

or otherwise consenting to any permanent sterilization of their daughter and ward, Lynn Dybdahl, for at least thirty (30) days from the date of this order.

It is further **ORDERED** that the foregoing injunction shall in no way affect or impinge upon the rights, powers, and duties of the Dybdahls with respect to the authorization of non-permanent methods of birth-control for Lynn Dybdahl.

It is further **ORDERED** that at the expiration of thirty (30) days from the date of this order, the parties shall report to this court the status of the state court proceedings on this matter, at which time this court shall render a decision with regard to the extension or dissolution of this preliminary injunction.

**SO ORDERED.**