[Civ. No. 42514. First Dist., Div. Two. Aug. 10, 1978.]

Guardianship of DIANNE L. TULLEY.
EDWIN ALFRED TULLEY, as Guardian, etc.,
Petitioner and Appellant, v.
DIANNE L. TULLEY, Objector and Respondent.

**COUNSEL**

Vorsatz & Vorsatz, Frank C. Vorsatz and Paul F. Vorsatz for Petitioner and Appellant.

Paul N. Halvonik, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, and Ezra Hendon, Deputy State Public Defender, for Objector and Respondent.

**OPINION**

**KANE, J.**—Petitioner, Edwin Alfred Tulley, appeals from the trial court's ruling denying his request to order the sterilization of his natural daughter and ward, Dianne L. Tulley (hereafter Dianne or ward). The facts are virtually undisputed, and may be briefly stated as follows:

On January 7, 1975, appellant was duly appointed the guardian of the person and estate of Dianne. On June 17, 1975, appellant filed a petition for instructions, stating inter alia that the ward was severely disabled because of profound mental retardation; that due to her incapacity she was unable to comprehend her personal needs or to cope with her menstrual cycle; and that it would be in the ward's best interest that she be surgically sterilized.

The matter was set for hearing on June 2, 1977. The evidence received at the hearing provided factual support to the allegations of the petition. Thus, the record showed that Dianne was suffering from cerebral palsy

with brain damage. At age 20 she had the intelligence and comprehension of a 3-year-old child. As a consequence, she was not only unable to comprehend the normal bodily function of the menstrual cycle, but was also incapable of attending to its attendant sanitary needs.

The medical testimony ruled out the probability that the severe retardation would change to any extent in the future. It was further established that although Dianne was capable of engaging in sexual intercourse, the potential pregnancy resulting therefrom would cause psychiatric harm. Based upon these facts, the medical experts concluded that a hysterectomy operation, which would remove the uterus without "unsexing" the patient, would be the right step to take and would also be in the best interest of the ward. While agreeing that the proposed sterilization would be justified both medically and socially and would serve the best interest of Dianne as well, the trial court felt compelled to deny the petition on the ground that the court was not authorized to approve or order the involuntary sterilization of an incompetent person who is unable to give her consent.

Since the facts of the case are undisputed, the matter to be decided on appeal is purely legal. Stated in broad terms, it calls for a determination whether in the absence of statute the court is authorized to order the involuntary sterilization of a mentally incompetent ward where, as here, the guardian consents to such operation, and the procedure suggested is justified both medically and socially. Appellant assiduously argues that in such an instance the court, even in the absence of specific statutes, should possess the legal authority to order sterilization as a matter of common law and/or as a constitutional mandate. We disagree with appellant and affirm the order.

To begin with, it has been widely recognized that sterilization (even if medically and socially indicated) is an extreme remedy which irreversibly denies a human being the fundamental right to bear and beget a child. Accordingly, the overwhelming majority of courts hold that the jurisdiction to exercise such awesome power may not be inferred from the general principles of common law, but rather must derive from specific legislative authorization. The position of case law is thus clear that in the absence of specific statutory authority the courts may not order the sterilization of a mentally defective person (*Sparkman* v. *McFarlin* (7th Cir. 1977) 552 F.2d 172, 175, revd. on other grounds in *Stump* v. *Sparkman* (1978) 435 U.S. 349 [55 L.Ed.2d 331, 98 S.Ct. 1099]; *Wade* v.

*Bethesda Hospital* (S.D.Ohio 1971) 337 F.Supp. 671, 674; *Frazier* v. *Levi* (Tex.Civ.App. 1969) 440 S.W.2d 393, 394; *Holmes* v. *Powers* (Ky.App. 1968) 439 S.W.2d 579; *In Interest of M. K. R.* (Mo. 1974) 515 S.W.2d 467, 470; 74 A.L.R.3d 1210, 1212-1213).

The California law is in full accord with the aforestated principles. The case in point is *Guardianship of Kemp* (1974) 43 Cal.App.3d 758 [118 Cal.Rptr. 64, 74 A.L.R.3d 1202], where, similar to the case at bench, respondent, the guardian of his incompetent adult daughter, petitioned the court to authorize and order the therapeutic sterilization of the ward. The petition alleged (and the medical evidence bore out the proposition) that the ward was capable of engaging in sexual activities, but was mentally unable to understand the result and implications of such activity; that the pregnancy of the ward would be an obvious probable result of such action; and that the mental deficiencies of the incompetent mother might be transmitted to any child born to her. The probate court found on the basis of this evidence that the sterilization of the ward was justified and issued an order authorizing the surgical procedure. In reversing the order, the reviewing court pointed out that there is no case law in California authorizing the sterilization of a mentally incompetent ward, nor is there any statute which would specifically confer such power upon the probate court. The only statute that provides for the sterilization of certain mentally disordered or mentally retarded persons is Welfare and Institutions Code,[1] section 7254, which, however, allows said drastic procedure only with respect to persons committed to mental hospitals and only under the limited conditions specified in the statute.[2] In holding that

_____

[1]Unless otherwise indicated, the references will be made to the California Welfare and Institutions Code.

[2]Section 7254 provides as follows: "*The provisions of this section apply to any person who has been lawfully committed or admitted to any state hospital for the mentally disordered or mentally retarded and who is afflicted with, or suffers from, any of the following conditions:*

"(a) *Mental disease which may have been inherited and is likely to be transmitted to descendants.*

"(b) *Mental retardation,* in any of its various grades.

"(c) *Marked departures from normal mentality.*

"*The State Department of Mental Health, with respect to a patient or resident in a state hospital* or home under its jurisdiction, and the State Department of Development Services with respect to a patient or resident in a state hospital or home under its jurisdiction, *upon compliance with the provisions of this section, may cause any such person to be sterilized* by the operation of vasectomy upon the patient if a male and of salpingectomy if a female or any other operation or treatment that will permanently sterilize but not unsex the patient. *When the superintendent of the state hospital* or state home *is of the opinion that a patient* who is afflicted with or suffering from any of the conditions specified in this section *should be sterilized, he shall certify such opinion to the*

the order of the probate court authorizing sterilization was in excess of its jurisdiction, the court placed special emphasis on the circumstance that the out-of-state authorities almost unanimously proscribed the involuntary sterilization of an incompetent person based on the common law, and that by the enactment of section 7254 the California Legislature strictly limited the scope of legally authorized sterilizations, set up stringent procedural safeguards, and made them *sine qua non* to any sterilization carried out by the aid of the court. As the appellate court put it, "In view of the fact that the Legislature has prescribed a comprehensive scheme requiring examination, notice, administrative hearings, administrative review, and judicial review, *it may be concluded that the Legislature did not intend that sterilization of the mentally retarded was to be carried out without meeting the requirements imposed by this statute*

*director of the department* having jurisdiction over the hospital or home *and shall at the same time give written notice of such certification to the patient* and to his known parents, spouse, adult children, *or guardian,* if any, by registered mail to their last known address. If the patient has no known relatives or guardian, such notice shall be given to the person who petitioned for the patient's commitment. *Such notice shall further state that written objection or written consent to the proposed sterilization, should be filed with the director of the department* having jurisdiction over the hospital or home at his office in Sacramento within 30 days by the patient, spouse, next of kin or guardian.

"*When a written consent is filed, or if no objection is filed within the 30 days, the director of the department* having jurisdiction over the hospital or home, *if satisfied that the sterilization will not unduly endanger the patient's health and that it is a proper case for sterilization, may authorize the superintendent to proceed with the sterilization of the patient. The director may cause such examination of the patient and other inquiry to be made as he deems advisable before issuing the authorization to the superintendent.*

"*If a written objection is filed* within the 30 days by the patient, his spouse, next of kin, or guardian, and in those cases where the patient has no known relatives or guardian, *the proposed sterilization shall not be authorized or performed until the director of the department* having jurisdiction over the hospital or home *has determined the matter. He shall make full inquiry into the case, and may hold a hearing* at the institution at which hearing the patient shall be present, and the objecting party and others interested on behalf of the patient may be heard. If the decision of the director is that the patient shall not be sterilized, he shall so order and notify the superintendent, the patient and the objecting party. *If the decision of the director is that the patient should be sterilized, he shall send notice of such decision to the patient,* his known parents, spouse, adult children, *and guardian,* if any, and the objecting party, by registered mail to their last known address. *Such notice shall further state that any such party has the right within 30 days to petition the superior court* of the county in which the institution is situated or of the county of the patient's residence *for a review of the decision.*

"*If such petition is filed within 30 days,* and a true copy thereof is served upon the director of the department having jurisdiction over the hospital or home, *the patient shall not be sterilized unless and until the court, after hearing, issues an order authorizing the sterilization of the patient* in accordance with the provisions of this section. If such petition is not filed in court within 30 days, the director may authorize the superintendent to proceed with such sterilization. The sterilization of a patient in accordance with the provisions of this section, whether performed with or without the consent of the patient, shall be lawful and shall not render the department, its officers or employees, or any persons participating in the operation liable either civilly or criminally." (Italics added.)

(Welf. & Inst. Code, § 7254)." (*Guardianship of Kemp, supra,* 43 Cal.App.3d at p. 763; italics added.)

■ In the case at bench, it stands undisputed that, at the time the petition for instructions was filed and the court order was made, Dianne was not committed or admitted to any state hospital for the mentally disordered or mentally retarded, and also that none of the steps prescribed by section 7254 were followed. The conclusion is thus inescapable that the case falls within the purview of *Kemp,* and the order denying the approval of sterilization must be sustained for this reason alone.

Appellant nonetheless insists that *Kemp* is not controlling in the instant case. The gist of appellant's argument is that *Kemp* was decided on the narrow ground that the superior court, sitting in probate, was of limited jurisdiction which, in the absence of statutory authority, was not empowered to order the guardian to consent to the sterilization of the adult incompetent ward. By contrast, argues appellant, in the case at bench the superior court proceeded as a court of general jurisdiction and thus possessed an inherent and unfettered equity power to serve and promote the interest and welfare of the incompetent (cf. *Guardianship of Reynolds* (1943) 60 Cal.App.2d 669, 675 [141 P.2d 498]), which necessarily included the power to consent to the sterilization operation at issue which was manifestly in the best interest of the ward. Appellant's contention must be rejected for at least two major considerations.

■ First, the general proposition of law that in the absence of a specific statute the courts may not order the sterilization of incompetent persons, is not predicated on the eventuality whether the tribunal proceeds as a probate court or a court of general jurisdiction. As mentioned before, the underlying rationale of the general rule is the obvious concern that the awesome power to deprive a human being of his or her fundamental right to bear or beget offspring must be founded on the explicit authorization of the Legislature rather than a mere inference deduced from the general principles of common law or the canons of equity jurisprudence. As the court remarked in *Sparkman* v. *McFarlin, supra,* 552 F.2d at page 176: "*Although courts ought not to be discouraged from creating innovative legal remedies to meet changing social conditions, they may not use the power to create new decisional law to order extreme and irreversible remedies such as sterilization* in situations where the legislative branch of government has indicated that they are inappro-

priate." (Italics added.) Consistent with these precepts, the proscription against court-ordered sterilization is pronounced in general terms without regard to the composition or capacity of the tribunal proceeding in the matter.

Second, appellant's argument must fail for the reason that the purported invocation of the equity power of the superior court must be deemed null and void. ■ It is well established that the probate court has exclusive jurisdiction of guardianship proceedings, and after a guardian has been appointed, the probate court has continuous jurisdiction over the guardian and the administration of the ward's affairs (*Guardianship of Kemp, supra,* 43 Cal.App.3d 758, 761; *Browne* v. *Superior Court* (1940) 16 Cal.2d 593, 598 [107 P.2d 1, 131 A.L.R. 276]).

Appellant's alternative argument that the trial court's refusal to grant the relief requested violated Dianne's constitutional right to privacy (cf. *Roe* v. *Wade* (1973) 410 U.S. 113 [35 L.Ed.2d 147, 93 S.Ct. 705]) does not require a lengthy discussion. Without going into the merits of this argument, suffice to say that the California statute does not erect an absolute bar to the sterilization of a mentally disordered or mentally retarded person. On the contrary, section 7254, as indicated before, does allow sterilization of such persons if they are inmates of a mental hospital and if the procedural safeguards circumscribed in the statute are adequately met. Appellant does not argue that the safeguards laid down in the statutory enactment are overly burdensome or unreasonable or that the statute is unconstitutional for any other reason. ■ Just the opposite, appellant concedes that the preservation of one's bodily reproductive functions is a fundamental right, and the termination thereof constitutes a serious invasion of the sanctity of the person. It is, of course, unquestionable that a state does have, and may properly assert, an interest in safeguarding health, in maintaining medical standards and in protecting potential life (*Roe* v. *Wade, supra,* 410 U.S. at p. 154 [35 L.Ed.2d at pp. 177-178]). It is likewise beyond dispute that when, as here, the deprivation of rights comprises a serious invasion of one's privacy and well being, the state is not only entitled, but also mandated to provide adequate procedural safeguards to ensure the avoidance of potential abuses (cf. *Wyatt* v. *Aderholt* (M.D.Ala. 1974) 368 F.Supp. 1383).

In sum, although we sympathize with appellant's cause and are well aware that institutionalization to which the sterilization procedure is presently tied is not easy to obtain in many instances, we are bound by the statute and case precedents pertaining thereto, and may not encroach

upon the province of the Legislature, which alone is authorized to bring about the suggested change by adding to, or amending, the existing statute.

The order is affirmed.

Taylor, P. J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 4, 1978.