In the Matter of the Guardianship of Joan I.
Eberhardy, Incompetent: Quintin Eberhardy
and Mary Eberhardy, Guardians, Appellants,

v.

Circuit Court for Wood County, The Honorable
Dennis D. Conway, Presiding, Respondent.†

Court of Appeals

No. 78-661. Argued May 17, 1979.—Decided May 23, 1980.
(Also reported in 294 N.W.2d 540.)

For the appellant the cause was submitted on the brief of *Edward F. Zappen* and *Zappen, Meissner & Craig,* with whom on the brief was *William J. Dehn,* guardian ad litem, all of Marshfield.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, with whom on the brief were *Donald P. Johns,* assistant attorney general, and *George B. Schwahn,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

† Petition for review granted.

BABLITCH, J. This is a joint appeal by the guardians and guardian ad litem of Joan Eberhardy, an incompetent adult, from an order of the circuit court for Wood County denying the guardians' petition for an order authorizing them to sign a consent for her sterilization.

The facts are not in dispute. Joan Eberhardy is a twenty-two-year-old woman who is "moderately severely" retarded. She has a mental age of two to three years. She has resided all her life with her mother and father who are sixty-two and sixty-five years old respectively. Joan is dependent upon her parents for all aspects of her physical care. She can feed herself, but her meat must be cut up for her. She cannot dress herself properly. She is unable to take a bath without supervision. She has no sense of danger in traffic and would be unable to find her way to and from home unescorted. She is extremely friendly and sociable.

Although Joan is seldom without the company of at least one of her parents, she sometimes attends a summer camp for retarded persons for a week or two at a time. Retarded males also attend this camp. After returning from one such vacation, she seemed upset for a time and missed her menstrual periods for three months, evoking her parents' concern that she might be pregnant. This prompted their consultation with doctors regarding the possibility of sterilizing Joan.

According to the testimony of Joan's personal physician, which is in complete agreement with the written reports of psychiatrists and other doctors who have examined her, there is no possibility that her intellectual capacities will improve in the future and they will probably deteriorate. The doctor testified that retarded persons are subject to the same sexual desires and passions as normal persons and that Joan does not have the judgment or capacity to control them. She would be unlike-

ly to resist a sexual advance. She would be incapable of using contraceptive devices. Pregnancy and the delivery of a baby would be traumatic events for her. She would be unable to care for a child born to her. The likelihood that such a child would be retarded at birth is one in four.

Joan's parents and doctors agree that it is in her best interests that she be sterilized by a tubal ligation. The record indicates that in May 1978, the Ethics Committee of the Marshfield Clinic approved the operation. The record does not disclose why the operation was not performed.[1]

On June 21, 1978, Joan's parents were appointed as the coguardians of her person and estate pursuant to ch. 880, Stats., which governs guardians and wards. On July 27, 1978, they filed the instant petition. The trial court appointed a guardian ad litem who joined in the recommendation that the sterilization be authorized by the court. After a hearing at which no testimony or evidence adverse to the petition was presented, the trial court issued a written decision indicating that it was convinced from the evidence that Joan was a fit subject for sterilization. The court held, however, that it lacked the power to authorize the requested surgical procedure and dismissed the petition. We affirm.

Section 801.04(1), Stats., of the Civil Procedure Code provides in relevant part:

JURISDICTION OF SUBJECT MATTER REQUIRED FOR ALL CIVIL ACTIONS. A court of this state may entertain a civil action *only when the court has power to hear the kind of action brought.* The power of the court to hear the kind of action brought is called "jurisdiction of the subject matter." Jurisdiction of the subject matter is *conferred by the constitution and statutes of this state*

[1] An attorney for the Marshfield Clinic appeared at, but did not participate in, the hearing on the petition to authorize the surgical sterilization.

*and by statutes of the United States;* it cannot be conferred by consent of the parties. [Emphasis supplied.]

The term "action" as used in the code includes "special proceeding," such as probate and guardianship proceedings. Sec. 801.01(1), Stats.

The appellants concede on this appeal that no statute expressly confers power on the circuit courts of Wisconsin to authorize the sexual sterilization of incompetents for any reason, including the reason that such a medical procedure may be in the best interests of the incompetent. The only Wisconsin statute to have authorized such a procedure, sec. 46.12, Stats. (1975),[2]

---

[2] Section 46.12, Stats. (1975), provided:

(1) The department may appoint a surgeon and a psychiatrist, of recognized ability, as experts, who (in conjunction with the superintendents of the state and county institutions who have charge of criminal, mentally ill and mentally deficient persons) shall examine inmates and patients of such institutions as to their mental and physical condition.

(2) The department may submit to the experts and to the superintendent the name of inmates or patients they desire examined, and the experts and the superintendent shall meet, take evidence and examine into the mental and physical condition of the named inmates or patients and report thereon to the department.

(3) If the experts and superintendent unanimously find that procreation is inadvisable the department may authorize an operation for the prevention of procreation.

(4) Before such operation, the department shall give at least 30 days' notice in writing to the husband or wife, parent or guardian of the inmate or patient, if known, and if unknown, to the person with whom such inmate or patient last resided.

(5) The experts shall receive as compensation $10 per day and expenses for the days consumed in the performance of their duties.

(6) The record made upon the examination shall be filed in the department; and semiannually after the operation, the superintendent of the institution where such inmate or patient is confined shall report to the department his condition.

(7) The department shall state in its biennial report the num-

was limited to inmates and patients of certain state and county institutions, and was repealed by sec. 4, ch. 428, Laws of 1977.

The appellants contend, however, that the court had jurisdiction to enter the requested order pursuant to art. VII, sec. 2, of the Wisconsin Constitution, which vests the judicial power of the state in the various courts of the state and pursuant to art. VII, sec. 8, which provides that circuit courts "shall have original jurisdiction in *all matters civil and criminal* within this state." [Emphasis supplied.][3] The appellants also rely on sec. 880.38 (2), Stats., which provides that "[a] guardian of the person shall endeavor to secure necessary care, services or appropriate protective placement on behalf of the ward." They contend that since no Wisconsin statute expressly prohibits the court from authorizing sterilization operations, and since medical witnesses and Joan's guardian ad litem and guardians all concur that the operation is necessary, the court is empowered to act. We cannot agree with these contentions.

Many courts have considered the question posed on this appeal, in a variety of contexts, in recent years.

ber of operations performed under this section and the result of the operations.

[3] *See also*, sec. 753.03, Stats., which provides in relevant part:

The circuit courts have the general jurisdiction prescribed for them by the constitution and have power to issue all writs, process and commissions provided in the constitution or by the statutes, or which may be necessary to the due execution of the powers vested in them. The circuit courts have power to hear and determine, within their respective circuits, all civil and criminal actions and proceedings unless exclusive jurisdiction is given to some other court; and they have all the powers, according to the usages of courts of law and equity, necessary to the full and complete jurisdiction of the causes and parties and the full and complete administration of justice, and to carry into effect their judgments, orders and other determinations, subject to review by the court of appeals or the supreme court as provided by law.

Only a handful of those courts have held that the judicial branch of government has the power, absent an express statute conferring the same, to authorize the sexual sterilization of a human being.[4] These holdings rest upon foundations which we view as being either inapplicable to this case or unsound under present Wisconsin law.

One legal commentator[5] has noted:

Absent specific statutory authority for sterilization of incompetents, there are three principal grounds that might be considered in justifying the [court's] assertion of jurisdiction: first, the traditional parens patriae power; second, the doctrine of substituted judgment; and third, a broad interpretation of existing general statutory authority over incompetents.

The few courts which have approved the sterilization of incompetents have used one or more of these three approaches or have not discussed the jurisdictional basis for their action.

In the first of these cases, *In re Simpson,* 180 N.E.2d 206 (Ohio, 1962), an Ohio probate court inferred the power to order the sterilization of a feeble-minded minor girl from the common-law doctrine of *parens patriae*[6] and from statutes providing that a probate judge "shall

---

[4] *Matter of Grady,* 170 N.J. Super. 98, 405 A.2d 851 (1979); *Matter of Sallmaier,* 85 Misc.2d 295, 378 N.Y.S.2d 989, (1976); *Ruby v. Massey,* 452 F. Supp. 361 (D. Conn., 1978); *Wyatt v. Aderholt,* 368 F. Supp. 1383 (M.D. Ala., 1974); *In Re Simpson,* 180 N.E.2d 206 (Ohio, 1962).

[5] *Courts—Scope of Authority—Sterilization of Mental Incompetents,* 44 Tenn. L. Rev. 879, 882 (1977).

[6] *Parens patriae* literally means "father of the country," and traditionally refers to the role of the state as guardian of persons under legal disabilities, such as juveniles or the insane. 67 C.J.S. *Parens Patriae* (1978); 44 C.J.S. *Insane Persons* sec. 3 (1945); *State of West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1089 (2nd Cir. 1971). Under the theory of *parens patriae* it is the right and duty of the state to step in and act in what appears to be the best interest of the ward.

then take such action and make such order as he deems necessary . . . to provide for the . . . care, and maintenance" of feeble-minded persons and conferring on probate courts "plenary power at law and in equity," to dispose of matters properly before the court. 180 N.E. 2d at 207. In *Matter of Sallmaier*, 85 Misc.2d 295, 378 N.Y.S.2d 989, 991 (1976), a New York Supreme Court judge relied solely on the *parens patriae* power "to protect an individual who is not able to make decisions in his own best interest" in granting an application to sterilize an adult woman.[7]

Both of these reported cases are the decisions of courts of limited original jurisdiction from which no appeal was taken. Neither discusses the doctrine of *parens patriae* at length and neither sets forth standards for making future decisions concerning the sterilization of incompetents. The holding of *Simpson*, 180 N.E.2d 206, is suspect in light of *Wade v. Bethesda Hospital*, 337 F. Supp. 671 (S.D. Ohio, 1971), which held that the Ohio statutes relied upon by the *Simpson* court did not confer jurisdiction to order sterilizations and that the judge who had ordered the same was consequently not immune from suit for damages under the Civil Rights Act. 337 F. Supp. at 673. *Sallmaier*, 85 Misc.2d 295, is also of doubtful current value in light of a subsequent case decided by a New York surrogate's court which expressly refused to follow it, holding that "[t]he sounder view . . . is that in the absence of specific statutory authority, the court lacks jurisdiction to make this fundamental and irreversible decision" to sterilize. *Applica-*

---

[7] *See also Sterilization, Retardation, and Parental Authority,* 1978 B.Y. Univ. L. Rev. 380, *Sterilization of the Mentally Retarded,* 17 J. of Fam. L. 834 (1978–79); Annot. 74 A.L.R.3d 1210 (1976); 44 C.J.S. *Insane Persons* sec. 3 (1945); and *Courts—Scope of Authority—Sterilization of Mental Incompetents,* 44 Tenn. L. Rev. 879, 882 (1977).

*tion of A.D.,* 90 Misc.2d 236, 394 N.Y.S.2d 139, 140 (1977).

The only other state court decision to our knowledge finding a common law authority to order sterilizations of incompetents is that of a New Jersey Superior Court in *Matter of Grady,* 170 N.J. Super. 98, 405 A.2d 851 (1979). The court found that it had, as a court of equity, an "inherent *parens patriae* jurisdiction to consider and act upon" a sterilization application by the parents of a noninstitutionalized retarded girl, despite the fact that the New Jersey statutes conferred power for approving such medical procedures only as to institutionalized persons. 405 A.2d at 863.

The court said in *Grady* that to hold that there could be no "jurisdictional authority . . . for substituted consent . . . other than by statute," 405 A.2d at 861, would raise an equal protection problem similar to that faced by the federal district court in *Ruby v. Massey,* 452 F. Supp. 361 (D. Conn., 1978). *Ruby* resolved the issue by holding that a Connecticut statute allowing judicially-approved sterilizations of institutionalized incompetents must be extended to apply to noninstitutionalized incompetents as a matter of constitutional right. 452 F. Supp. at 369. *Grady* recognized that the *Ruby* "ruling, extending the statute beyond its express coverage, assumes the lack of inherent jurisdiction in any court of Connecticut to consider sterilization of noninstitutionalized incompetents absent statutory authority." 405 A.2d at 862. *Grady* concluded, however, that the New Jersey legislature had "assumed quite the contrary, *i.e.,* that the courts in this State do have the inherent power to entertain such an application where noninstitutionalized incompetents are involved." 405 A.2d at 862.

The approach employed by the *Grady,* 405 A.2d 851, court is not tenable in Wisconsin, in light of the legislature's recent abolishment of the statutory authoriza-

tion for sterilization of institutionalized persons contained in former sec. 46.12, Stats. (1975). Moreover, the court's holding in *Grady* is contrary to the great weight of authority in other jurisdictions. As the Alabama Supreme Court noted in *Hudson v. Hudson,* 373 So.2d 310, 311–12 (Ala., 1979) :

[T]he overwhelming majority of the courts which have considered the issue . . . have refused to sanction the surgical sterilization of mentally deficient persons without specific legislative authority.
. . . The profound nature of the constitutional and social issues raised by this case and the irreversible character of the physical consequences of the requested relief preclude judicial resolution absent legislative action. [Citations omitted.]

*See also Guardianship of Tulley,* 83 Cal. App.3d 698, 146 Cal. Rptr. 266 (1978) ; *Matter of D.D.,* 64 A.D.2d 898, 408 N.Y.S.2d 104 (1978) ; *In Re Marcia R.,* 136 Vt. 47, 383 A.2d 630 (1978) ; *Application of A.D.,* 90 Misc.2d 236, 394 N.Y.S.2d 139 (1977) ; *Matter of S.C.E.,* 378 A. 2d 144 (Del. Ch., 1977) ; *Guardianship of Kemp,* 43 Cal. App.3d 758, 118 Cal. Rptr. 64 (1974) ; *A.L. v. G.R.H.,* 163 Ind. App. 636, 325 N.E.2d 501, 74 A.L.R.3d 1220 (1975) ; *In Interest of M.K.R.,* 515 S.W.2d 467 (Mo., 1974) ; *Holmes v. Powers,* 439 S.W.2d 579 (Ky. 1968), *reh. den.,* 439 S.W.2d 580 (1969) ; *Frazier v. Levi,* 440 S.W.2d 393 (Tex. Civ. App., 1969) ; *Wade v. Bethesda Hospital,* 337 F. Supp. 671 (S.D. Ohio, 1971).

Although the cases cited above construe a wide variety of state statutes and constitutional provisions, they share a common underpinning in concluding that the legislature and not the courts should establish the standards and conditions, if any, upon which incompetents may be deprived of their opportunity to bear children. The right to procreate has been recognized by the United States Supreme Court as "one of the basic civil rights

of man." *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942).[8] As the California Court of Appeals has stated:

[T]he obvious concern that the awesome power to deprive a human being of his or her fundamental right to bear or beget offspring must be founded on the explicit authorization of the Legislature rather than a mere inference deduced from the general principles of common law or the canons of equity jurisprudence. *Guardianship of Tulley*, 83 Cal. App.3d at 704, 146 Cal. Rptr. at 270.

The Wisconsin Supreme Court expressed a similar concern in *In re Guardianship of Pescinski*, 67 Wis.2d 4, 226 N.W.2d 180 (1975), in which it refused to adopt the doctrine of substituted judgment under circumstances analogous to those before us. In that case the guardian of an institutionalized incompetent filed a petition in county court seeking authorization for a kidney transplant from the ward to his sister, whose death was imminent without the transplant. The trial court appointed a guardian ad litem for the ward, who refused to consent to the operation. In affirming the trial court's conclusion that it had no power to approve the operation, the court refused to follow a Kentucky court of appeals decision which rested on a broad interpretation of the court's traditional powers in equity, and said:

"[S]ubstituted judgment" is nothing more than an application of the maxim that equity will speak for one who cannot speak for himself. Historically, the substituted judgment doctrine was used to allow gifts of the property of an incompetent. If applied literally, it would allow a trial court, or this court, to change the designation on a life insurance policy or make an election for an incompetent widow, without the requirement of a

---

[8] *See also, Eisenstadt v. Baird*, 405 U.S. 438 (1972); *Roe v. Wade*, 410 U.S. 113 (1973); *Planned Parenthood v. Danforth*, 428 U.S. 52 (1976); *Carey v. Population Services International*, 431 U.S. 678 (1977).

statute authorizing these acts and contrary to prior decisions of this court.

We conclude that the doctrine should not be adopted in this state. [Footnote omitted.] 67 Wis.2d at 8, 226 N.W.2d at 182.

The appellants correctly point out that *Pescinski* is distinguishable from this case in that Joan's guardian ad litem has approved the operation, and that the evidence is undisputed that it will serve her best interests. In *Pescinski,* as the supreme court noted, there was "absolutely no evidence," nor could there be, "that any interests of the ward will be served by the transplant." 67 Wis.2d at 7, 226 N.W.2d at 181. The appellants urge that the holding of *Pescinski* be limited to cases which fall within the concluding sentence of the majority opinion, which stated:

In the absence of real consent on his part, *and in a situation where no benefit to [the ward] has been established,* we fail to find any authority for the county court, or this court, to approve this operation. 67 Wis.2d at 8–9, 226 N.W.2d at 182. [Emphasis supplied.]

We think that *Pescinski* should not be read so narrowly, and that the factual distinctions provide an insufficient basis to allow a departure from the central import of the supreme court's holding. The court stated that in the absence of the incompetent's consent, which was impossible to obtain, there was "no question" that the trial court was without power to approve the operation, since "[t]here is no statutory authority given the county court to authorize a kidney transplant or any other surgical procedure on a living person." 67 Wis.2d at 7, 226 N.W.2d at 181. It further expressly determined that in the absence of a substituted judgment doctrine, which it specifically refused to adopt, the supreme court itself had no such power. 67 Wis.2d at 8.

If the courts were to assume the power to pass upon an application for authorization to perform a medical operation which is not medically necessary to an incompetent, the courts would be forced either to exercise this power in a standardless vacuum or to create standards for decisions in this delicate area without the benefit of legislative guidance. *See Grady,* 405 A.2d at 863 *et seq.* and *Wyatt v. Aderholt,* 368 F. Supp. 1383 (M.D. Ala., 1974), both of which enunciated detailed prerequisites and procedures for future sterilizations.[9]

We think that the sounder view, and the view made binding on this court by the supreme court's ruling in *Pescinski,* 67 Wis.2d 4, is that the courts are without the power to make such determinations unless that power is conferred by legislation. As the supreme court of Missouri observed in *In Interest of M.K.R.,* 515 S.W. 2d 467 at 470–71, which involved the application to a juvenile court for authorization to sterilize an incompetent minor:

The courts are not faced in this case with a prayer for a judgment authorizing ordinary medical treatment,

---

[9] The standards created in *Wyatt, supra,* were set forth in an order by a federal district judge a few days following the issuance of an opinion of a three judge panel of the court in the same case, 368 F. Supp. 1382 (1973). The panel's per curiam decision held that an Alabama statute permitting officials to sterilize mentally retarded inmates of institutions when they "deem it advisable" was "clearly and obviously unconstitutional" because it failed to provide for notice, a hearing, or other procedural safeguards, 368 F. Supp. at 382–83. The panel indicated that an injunction against the enforcement of the statute was not necessary. The order subsequently issued by a single judge of the panel recited that it was necessary for the court to promulgate procedural safeguards "since it appears that sterilization continues to be performed in certain instances by the state health authorities." 368 F. Supp. at 1384. The court did not discuss the jurisdictional basis for its order.

or radical surgery necessary to preserve the life of a child; we are faced with a request for sanction . . . of what no doubt is a routine operation which would irreversibly deny to a human being a fundamental right, the right to bear or beget a child. Jurisdiction of the juvenile court to exercise the awesome power of denying that right may not be inferred from the general language of the sections of the code to which we have referred. Such jurisdiction may be conferred only by specific statute.

Whatever might be the merits of permanently depriving this child of this right, the juvenile court may not do so without statutory authority—authority which provides guidelines and adequate legal safeguards determined by the people's elected representatives to be necessary after full consideration of the constitutional rights of the individual and the general welfare of the people.

*Accord, Guardianship of Tulley,* 146 Cal. Rptr. at 271; *In Matter of D.D.,* 408 N.Y.S.2d at 106; *Application of A.D.,* 394 N.Y.S.2d at 141; *Wade v. Bethesda Hospital,* 337 F. Supp. at 674.

We are aware that a majority of the United States Supreme Court has construed statutory language similar to that contained in sec. 753.03, Stats.,[10] to confer subject matter jurisdiction on an Indiana Circuit Court judge to entertain a petition for sterilization of an alleged incompetent minor.[11] *Stump v. Sparkman,* 435 U.S. 349 (1978), *reh. den.* 436 U.S. 951 (1978). That decision, if applicable to the case before us, would not control the interpretation of Wisconsin law by Wisconsin courts.[12]

---

[10] *See* footnote 3, *supra.*

[11] The Indiana statute conferred on circuit courts "original exclusive jurisdiction in all cases at law and in equity whatsoever, . . . except where exclusive or concurrent jurisdiction is, or may be conferred by law upon justices of the peace." 435 U.S. at 357, n. 8.

[12] This court noted in *Goodyear Tire & Rubber Co. v. DILHR,* 87 Wis.2d 56, 65, 273 N.W.2d 786, 791 (1978):

Wisconsin courts . . . must construe Wisconsin statutes as it is

We conclude, however, that *Sparkman* is inapplicable to the determination of this case. The issue before the federal court was whether a state judge who had granted an *ex parte* sterilization order was entitled to judicial immunity from damages in a suit brought under the Civil Rights Act by the sterilized woman. The court noted the "well established" doctrine that "a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." 435 U.S. at 355. It held at 356–57:

Because "some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction . . . ," the scope of the judge's jurisdiction *must be construed broadly where the issue is the immunity of the judge.* A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the *"clear absence of all jurisdiction."* [Footnote and citations omitted; emphasis supplied.]

The court concluded that in the absence of a statute or case law expressly prohibiting a court of general jurisdiction from considering a sterilization petition, the judge had the power to act upon it, even if it would have been legally improper for him to grant the requested authorization. 435 U.S. at 356–57.

We think that this view of judicial jurisdiction, rendered in the context of defining the scope of judicial immunity from suit, cannot be relied on to define the

believed the Wisconsin legislature intended, regardless of how Congress may have intended comparable statutes. Even the United States Supreme Court must abide by this state's interpretation of its laws. *Groppi v. Wisconsin*, 400 U.S. 505, 507 (1971), *Mullaney v. Wilbur*, 421 U.S. 684 (1975).

scope of a state court's power to act on an application for sterilization under state law. The perimeters of the power conferred on courts of this state by the Wisconsin Constitution were considered in the case of *Will of Rice: Cowie v. Strohmeyer,* 150 Wis. 401, 136 N.W. 956, 137 N.W. 778 (1912). In holding that the circuit court had no power to approve a stipulation between heirs of a deceased which materially altered the terms of the deceased's will, the Wisconsin Supreme Court stated:

Now where did the circuit court find jurisdiction to do what was done in this case . . .? Its jurisdiction was confined to applying the law within the constitutional grant of power, not making it or breaking it. It derived its authority as to the subject, if it had any, from sec. 8, art. VII, of the constitution, for there is no statute affording any such power. The extent of its power did not go beyond "all matters civil and criminal within this state, not excepted in this constitution, and not hereafter prohibited by law . . . ." The term "matters civil" refers to controversies in law and equity to redress and prevent wrongs and to enforce and preserve and conserve rights, . . . a jurisdiction after the manner of the common law as recognized when the constitution was adopted . . . . Jurisdiction of the subject matter "is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred," meaning conferred by law, not by mere consent of the parties. 150 Wis. at 450, 136 N.W. at 975. [Citation omitted; quoting from *Cooper v. Reynolds,* 77 U.S. 308 (1870).]

It is our opinion that unless and until the legislature confers express power on Wisconsin courts to authorize the sterilization of incompetent persons under stated circumstances, the courts are without jurisdiction to consider the same.

*By the Court.*—Order affirmed.