**P.S., A Minor Child By Her Next Friend, Marjorie HARBIN, Appellant (Plaintiff Below),**

v.

**W.S. and P.S., Appellees (Defendants Below).**

No. 2–281A39.

Court of Appeals of Indiana, Second District.

Dec. 8, 1982.
Rehearing Denied Jan. 27, 1983.

Kenneth J. Falk, Peter L. Cassady, Legal Services Organization of Indiana, Inc., Indianapolis, Jane Cullen, Legal Services Organization of Indiana, Inc., Bloomington, for appellant.

Elisabeth M. Daily, Thomas A. Withrow, Diane Hubbard Kennedy, Henderson, Daily, Withrow, Johnson & Gross, Indianapolis, for appellees.

SULLIVAN, Judge.

The Appellant, P.S. (the child), by her next friend, filed a complaint for permanent injunctive and declaratory relief against the Appellees, W.S. and P.S. (parents), who were planning to have her sterilized. The trial court granted a temporary restraining order with extensions, but, after a consolidated hearing on the merits of the preliminary and permanent injunctions pursuant to Ind.Rules of Procedure, Trial Rule 65(A)(2), refused to grant a permanent injunction. This Court stayed the trial court's order pending appeal.

We reverse.

The child presented a number of issues for review. In view of our disposition, how-

ever, we need only address the following issue: did the trial court err in placing the burden of proof on the child to establish that she should not be sterilized.

The child is a physically healthy female born August 8, 1968. At the time of the judgment of the trial court in this cause, she was twelve years old. She suffers from "moderate" mental retardation, autism and dyspraxia. She is self-destructive and is capable of inflicting substantial harm to her person and environment. She has lived with her parents all her life; for two years, however, she spent five days each week in Bloomington, Indiana at the Developmental Training Center.

The child is continent to a certain extent, but has frequent accidents. She has some self-care capabilities: she can dress herself, brush her hair and teeth, wash and bathe herself and regulate the bath water. However, because of her sometimes intractable nature, her performance of these tasks is not consistent. At the time of trial, she was not yet menstruating.

The child, as part of her self-destructive behavior, manifests a fascination with blood. She picks at her fingers and rubs her arms against sharp objects until they bleed. Unless she is bandaged, she will rub her arms and hands against the floor to open the scabs so that they will bleed anew. There was testimony at trial that the onset of menstruation might cause a severe reaction, and that the child might even attempt to continue the blood flow after it stopped.

During the trial of this cause, the child was transferred to a residential facility for autistic children in New Hampshire. Much of the testimony regarding her capabilities, training, and ability to deal with her menstrual period, however, came from staff at the *Developmental Training Center in Bloomington.* This facility, until recently, was confined to the treatment of children under twelve. Concededly, the staff at the Center had little experience in training autistic children to cope with menstruation.

In preparation for the child's transfer to New Hampshire and their first long-term separation, her parents decided to have her sterilized. They consulted numerous physicians and other persons regarding their decision. None thought sterilization was improper at that point. The surgery was scheduled to be performed without judicial authorization and without the child's consent. Prior to the planned date, however, the child, by her next friend, instituted this action to enjoin the parents from having the hysterectomy performed.

This case comes to us in a unique posture. In all other recorded cases, the parents or guardians petitioned the court for authority to perform a sterilization. Here, however, the parents take pains to note that their appellate position rejects the necessity of judicial authorization for the operation.[1] Rather, they contend that the parents' duty to seek medical treatment for their child coupled with the power granted by statute to consent for their child to medical treatment permit them to consent to the sterilization of their child. *See* I.C. 16-8-3-1 (Burns Code Ed. 1973); I.C. 16-8-4-2.

■ Parents traditionally have had the power to authorize appropriate medical care for their children, *see A.L. v. G.R.H.* (1975) 163 Ind.App. 636, 325 N.E.2d 501, *cert. denied,* (1976) 425 U.S. 936, 96 S.Ct. 1669, 48 L.Ed.2d 178. Nevertheless, cases are legion in which the courts have held that traditional parental rights do not include the right to sterilize, even if the child is mentally handicapped. *Id.* at 638, 325 N.E.2d at 502. *See also Ruby v. Massey* (D.Conn. 1978) 452 F.Supp. 361; *Wade v. Bethesda Hospital* (S.D.Ohio 1971) 337 F.Supp. 671, *motion for reconsideration denied,* 356 F.Supp. 380; *Hudson v. Hudson* (Ala.1979) 373 So.2d 310; *Guardianship of Tulley* (1978) 83 Cal.App.3d 698, 146 Cal.Rptr. 266,

---

1. We do not view the Appellees' appellate contentions changed by a seemingly inconsistent Petition for Authority to Sterilize filed in the trial court subsequent to the denial of the child's Motion to Correct Error and subsequent to an oral argument in this court upon the child's Petition for Stay of Judgment. The Petition for Authority to Sterilize was denied upon grounds that the denial of the injunction was res judicata as to that issue.

*cert. denied,* 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783; *Matter of S.C.E.* (Del.Ch.1977) 378 A.2d 144; *Holmes v. Powers* (Ky.1968) 439 S.W.2d 579; *In re M.K.R.* (Mo.1974) 515 S.W.2d 467; *In re Penny N.* (1980) 120 N.H. 269, 414 A.2d 541; *Application of A.D.* (1977) 90 Misc.2d 236, 394 N.Y.S.2d 139, aff'd, (1978) 64 A.D.2d 898, 408 N.Y.S.2d 104; *Matter of Guardianship of Eberhardy* (1980) 97 Wis.2d 654, 294 N.W.2d 540. As the Supreme Court of Colorado noted:

> "Simply allowing the parents or guardians of the mentally retarded person to substitute their decision and consent to sterilization for that of the incompetent person is not an adequate solution to the problem. Consent by parents to the sterilization of their mentally retarded offspring has a history of abuse which indicates that parents, at least in this limited context, cannot be presumed to have an identity of interest with their children. The inconvenience of caring for the incompetent child coupled with fears of sexual promiscuity or exploitation may lead parents to seek a solution which infringes their offspring's fundamental procreative rights. *See Stump v. Sparkman,* 435 U.S. 349, 359, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978) . . . ." *In re A.W.* (Colo.1981) 637 P.2d 366, 370 (footnotes and additional citations omitted).

*Accord, Ruby v. Massey, supra,* 452 F.Supp. 361; *In re Hayes* (1980) 93 Wash.2d 228, 608 P.2d 635.

This case does not involve ordinary medical treatment or radical surgery immediately necessary to preserve the life of the child. This operation would irreversibly deny to a human being a fundamental right, the right to choose whether to beget a child. *Carey v. Population Services International* (1977) 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675. *See also Skinner v. Oklahoma* (1942) 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655. Whatever may be the merits of permanently depriving this child of that right, the case has not reached us in a posture suitable for determining whether the parents have met *their* burden to show that their child should be sterilized.

Indeed, several courts have held that, absent a statute, they have no jurisdiction, despite the breadth of their equity powers, to authorize a sterilization. *See Wade v. Bethesda Hospital, supra* (court of limited jurisdiction); *Hodson v. Hodson, supra; Guardianship of Tulley, supra; Guardianship of Kemp* (1974) 43 Cal.App.3d 758, 118 Cal.Rptr. 64, 74 A.L.R.3d 1202 (court of limited jurisdiction); *In re S.C.E., supra; Holmes v. Powers, supra; In re M.K.R., supra; Frazier v. Levi* (Tex.Civ.App.1969) 440 S.W.2d 393 (court of limited jurisdiction). Nevertheless, in most recent cases courts have held that they may authorize the sterilization of an incompetent under appropriate circumstances, even in the absence of a statute. *Matter of C.D.M.* (Alaska 1981) 627 P.2d 607; *Matter of A.W.* (Colo.1981) 637 P.2d 366; *In re Penny N., supra,* 120 N.H. 269, 414 A.2d 541; *In re Grady* (1981) 85 N.J. 235, 426 A.2d 467; *Matter of Guardianship of Eberhardy, supra,* 102 Wis.2d 539, 307 N.W.2d 881. The courts in these cases rested their determination upon the breadth of their *parens patriae* equity jurisdiction and pointed to other cases in which a court, in substituting its judgment for that of an incompetent, had authorized various actions. *See Hart v. Brown* (1972) 29 Conn.Supp. 368, 289 A.2d 386 (kidney transplant); *Strunk v. Strunk* (Ky.App.1969) 445 S.W.2d 145 (kidney transplant); *Superintendent of Belchertown State School v. Saikewicz* (1977) 373 Mass. 728, 370 N.E.2d 417 (refusal to submit profoundly retarded man to chemotherapy); *In re Schiller* (Ch.Div.1977) 148 N.J.Super. 168, 372 A.2d 360 (amputation of leg); *In re Quinlan* (1976) 70 N.J. 10, 355 A.2d 647, *cert. denied,* 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (discontinuance of life support systems); *State v. Perricone* (1962) 37 N.J. 463, 181 A.2d 751, *cert. denied,* 371 U.S. 890, 83 S.Ct. 189, 9 L.Ed.2d 124 (blood transfusion over objections of injured or sick child's parents).

Nevertheless, we need not determine whether a court exercising original and exclusive juvenile jurisdiction would have subject matter jurisdiction to authorize the

sterilization of an incompetent minor upon the petition of the parents. *But see Stump v. Sparkman, supra,* 435 U.S. at 357–59, 98 S.Ct. at 1105–06 (in which the Supreme Court held that an Indiana circuit court as a court of general jurisdiction had jurisdiction to entertain and act upon a petition to sterilize). *See also A.L. v. G.R.H., supra,* (in which the Vanderburgh Superior Court, vested by statute (I.C. 33–5–43–5) with juvenile jurisdiction, considered and denied a parent's petition to sterilize).[2] Instead, we must only determine whether the court here had jurisdiction to hear the complaint of the child. We conclude that it did.

I.C. 31–6–2–1(a) (Burns Repl.1980) provides in part: "A juvenile court has exclusive original jurisdiction . . . in the following: . . . (8) Proceedings to issue a protective order (IC 31–6–7–14)." I.C. 31–6–7–14(a) (Burns Repl.1980) provides in part:

"Upon its own motion or upon the motion of the child, the child's parent, guardian, custodian or guardian ad litem, . . . the juvenile court may, for good cause shown upon the record[,] issue an injunction:

(1) to control the conduct of any person in relation to the child; . . ."

This action was brought for the child by her next friend to obtain a permanent injunction barring her parents from sterilizing her. We find that the above-quoted statutes gave the court jurisdiction to hear the petition of the child. Our finding does not necessarily mean, however, that the court's power to control by injunction the conduct of any person gave it the power to authorize the planned sterilization. *Compare Lehman v. Montgomery* (1954) 233 Ind. 393, 395, 120 N.E.2d 172, 174 ("The Marion County Juvenile Court has all the incidental powers of other courts") *with In re M.K.R., supra,* 515 S.W.2d 467, (juvenile court, as a creature of statute, has only those powers conferred upon it by statute and cannot authorize sterilization of minor).[3]

The child argues that the court erred in placing the burden of ultimate persuasion on her to show she should not be sterilized. The court entered special findings and conclusions upon its own motion, pursuant to Ind.Rules of Procedure, Trial Rule 52(A), and stated in part:

"7. The Plaintiff sought to permanently enjoin the Defendants from consenting to a hysterectomy to be performed on their minor daughter P.S. *The Plaintiff has failed to sustain her burden of proof* in that she has not established that:

(a) P.S. is biologically incapable of conception and procreation.

(b) P.S. is unlikely to engage in sexual activities under circumstances likely to result in pregnancy.

(c) P.S. is capable of caring for herself or a child or is likely to become capable of doing so.

(d) P.S. is capable of understanding the nature of sexual function, reproduction or sterilization and is capable of making an informed consent to the proposed operation or is likely to develop sufficiently to make an informed consent.

(e) Other methods of birth control are workable under the circumstances.

(f) The proposed method of sterilization is not the least invasion of P.S.'s body.

(g) The current state of medical and scientific knowledge suggest (sic) that less drastic procedures will be available within a reasonable time or that a breakthrough in the treatment of any of P.S.'s disabilities in the near future is likely.

(h) The performance of a hysterectomy is not in the best interests of P.S.

\*    \*    \*    \*    \*    \*

*Conclusions of Law*

\*    \*    \*    \*    \*    \*

---

**2.** It may be noted that the court here involved is a division of the Marion County Superior Court, a court of general jurisdiction. I.C. 33–5–35.1–4 (Burns Supp.1982).

**3.** *See* fn. 2, *supra.*

3. Based upon the Court's findings, the *Plaintiff failed to sustain her burden of proof* required to support the entry of a permanent injunction." Record at 188–89 (emphasis added).

This Court is bound by these findings and cannot disregard them in determining whether inferences can be drawn from the record to support the trial court's general finding. T.R. 52(A), (D). *See Reffeitt v. Reffeitt* (3d Dist.1981) Ind.App., 419 N.E.2d 999, *Dolph v. Mangus* (3d Dist.1980) Ind.App., 400 N.E.2d 189; *Kizer v. Davis* (2d Dist.1977) 174 Ind.App. 559, 369 N.E.2d 439. Moreover, when a trial court makes findings and conclusions, this Court will reverse the judgment if they are clearly erroneous. *Cox v. Ubik* (3d Dist.1981) Ind. App., 424 N.E.2d 127.

The right to procreate is "fundamental to the very existence and survival of the race." *Skinner v. Oklahoma* (1942) 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655. This right is "a basic liberty" of which the individual is "forever deprived" through involuntary sterilization. *Id.* The United States Supreme Court has identified the right to choose whether to bear a child as subsumed within the general right to personal privacy. *Carey v. Population Services International* (1977) 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675; *Roe v. Wade* (1973) 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147. "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraints or interference of others . . . ." *Terry v. Ohio* (1968) 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889, *quoting, Union Pacific Railway Co. v. Botsford* (1891) 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734.

As the proponent in seeking an injunction, the child was required to show that she had an interest included within the scope of the particular constitutional right involved. This she accomplished merely by showing that she was a human being biologically capable of procreation. In addition, she bore the burden to show that her parents intended to sterilize her without judicial scrutiny of any kind. She was required to show that the threatened surgery was imminent. A mere apprehension or fear of injury would have been insufficient. 16 I.L.E. *Injunction* § 118. *See also* I.C. 34–1–10–2 (Burns Code Ed.1973). The parents maintained throughout this action that they would have sterilized the child but for this proceeding and that they continued to desire to do so.

Upon the child's showing of the above facts, she established a prima facie case entitling her to the injunctive relief sought. *See A.L. v. G.R.H., supra,* 163 Ind.App. 636, 325 N.E.2d 501. *See also State ex rel. Mavity v. Tyndall* (1946) 224 Ind. 364, 66 N.E.2d 755, *cert. denied,* 333 U.S. 834, 68 S.Ct. 609, 92 L.Ed. 1118 (an injunction may be granted for the protection of personal rights, including the right of privacy).

The parents here might have avoided the injunction by demonstrating, if it were the fact, that they did not intend to sterilize their child. However, their intent was quite clearly otherwise. Of course a formal judicial authorization of sterilization would also constitute a defense against an injunction such as that sought by the child here. Quite obviously, however, such defense was not available to these parents for they had neither sought nor obtained such authorization. Rather they sought to defend against the injunction solely by the introduction of evidence which in a different procedural posture might have arguably resulted in a proper judicial determination that sterilization was in the child's best interests. We must reject such defense for evidence of record may not be considered to have proved an issue if that issue is not in litigation.

Because the trial court determined that the child bore the burden of proof—apparently because she was the plaintiff in the action—the burden was placed on the child to show that it was not in her best interests to be sterilized.

Certainly, a fundamental right is meaningless if the possessor carries the burden of

proving the right to exercise it. Affirmative judicial authorization must be obtained for sterilization of an incompetent.

In light of the child's proof of her prima facie case, it was error for the trial court to deny the injunction. The judgment is therefore reversed and the cause remanded with instructions to grant the injunction.[4]

SHIELDS, J., concurs.

BUCHANAN, C.J., dissents and files separate opinion.

BUCHANAN, Chief Judge, dissenting.

I must respectfully dissent.

It is my view that the juvenile court has jurisdiction to authorize a sterilization if it is demonstrated by clear and convincing evidence that the medical procedure is in the best interest of the child. The procedural posture of this case should not prevent us from adopting the position of persuasive authorities holding that a specific enabling statute is not required.[1] *In re C.D.M.,* (Alaska 1981) 627 P.2d 607; *In re A.W.,* (Colo.1981) 637 P.2d 366; *In re Grady,* (1981) 85 N.J. 235, 426 A.2d 467; *In re Hayes,* (1980) 93 Wash.2d 228, 608 P.2d 635; *In re Eberhardy,* (1981) 102 Wis.2d 539, 307 N.W.2d 881.

In order to circumvent the question whether juvenile courts have jurisdiction to authorize sterilizations, the majority attempts to distinguish this injunction setting from the more typical authorization proceedings which usually confront the courts. But the real question at hand, whether juvenile courts may authorize a sterilization when faced with clear and convincing evidence that such a procedure would be in the best interest of the child, should not be side-stepped so casually. As the trial court recognized, denial of P.S.'s request for injunctive relief *was in fact* an authorization. Implicit in the denial of injunctive relief by the trial court is the determination that the proposed action is justified and appropriate. To hold otherwise is to exalt form over substance.

The effect of P.S.'s petition to enjoin was to compel her parents to justify their proposed action. Once P.S. showed that harm to her was imminent, *i.e.,* that her parents proposed to take action which would deny her the ability to bear children, it was incumbent upon the parents to demonstrate that the sterilization was in P.S.'s best interest. It is my view that P.S.'s parents more than met that burden.

Even if one assumes the trial court's placement of the burden of proof was error, I would affirm the judgment authorizing

---

4. For several reasons we do not go further and remand for consideration of the Petition for Authority to Sterilize referred to in fn. 1, *supra.* First and foremost, it may be that circumstances have changed to the extent that sterilization is no longer desired by the parents. Secondly, the trial court denied the Petition and to the best of our knowledge the parents did not perfect an appeal from that ruling. It may be noted, however, that in light of this opinion, the reason given for the trial court's ruling on the Petition is erroneous. Determination of the child's right to an injunction in the absence of prior judicial authorization does not of itself preclude a future determination that sterilization is in the best interest of the child. In such instance and upon proper petition, a court of competent jurisdiction might authorize sterilization. That the parties and the trial court may have assumed that denial of the injunction carried with it an affirmative judicial authorization of the sterilization is irrelevant.

1. I recognize that in *A.L. v. G.R.H.,* (1975) 163 Ind.App. 636, 325 N.E.2d 501, *cert. denied,* 425

U.S. 936, 96 S.Ct. 1669, 48 L.Ed.2d 178, the third district of this court cited with approval Missouri and California decisions which held juvenile courts powerless to authorize sterilizations in the absence of specific statutory authority. *But see Stump v. Sparkman,* (1978) 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (Indiana court of general jurisdiction had power to authorize sterilization). The case before us is distinguishable because in affirming the trial court's denial of authorization to sterilize, Judge Garrard noted the absence of any showing that such procedures were necessary for the medical welfare of the child. Testimony in this case centered precisely around that issue: *I.e.,* the effects of menstruation and child-bearing on P.S.'s mental and physical health. Furthermore, recognizing that this district is not bound by that case, I respectfully disagree with the suggestion in *A.L. v. G.R.H.* that a life-threatening medical reason must be shown to support a court-authorized sterilization.

the sterilization. Any such claimed error was harmless in the face of overwhelming evidence presented that the sterilization was in P.S.'s best interest. The clear mandate of Ind.Rules of Procedure, Trial Rule 61[2] is that only harmless error results if a defect in the proceedings "does not affect the substantial rights of the parties." In order to merit reversal, the record must demonstrate not only an erroneous ruling, *but also resulting prejudice. Atwood v. Prairie Village, Inc.,* (1980) Ind.App., 401 N.E.2d 97; *Honey Creek Corp. v. WNC Development Co.,* (1975) 165 Ind.App. 141, 331 N.E.2d 452, *trans. denied; Westfield Gas Corp. v. Hill,* (1960) 131 Ind.App. 558, 169 N.E.2d 726, *trans. denied. See also Hacker v. Dan Young Chevrolet,* (1973) 159 Ind.App. 28, 304 N.E.2d 552 (trial court's improper imposition of standard of care held harmless when correct result was reached). As early as 1942, the rule of appellate procedure was

> "universally recognized and applied that a party cannot assign as error that which is not prejudicial to him. Error as such, unaccompanied by prejudice, is not ground for reversal. *The purpose of review is to correct an erroneous result and not merely to approve or disapprove the grounds upon which it is based.*"

*Baker v. State Bank,* (1942) 112 Ind.App. 612, 44 N.E.2d 257, 260 (emphasis supplied). That the trial court demonstrably placed the burden of proof on P.S. is of no consequence, for even erroneous findings of fact or conclusions of law do not merit reversal, absent prejudice to the appellant. *Indiana Insurance Co. v. Sentry Insurance Co.,* (1982) Ind.App., 437 N.E.2d 1381; *City of New Haven v. LeFever,* (1968) 143 Ind.App. 88, 238 N.E.2d 487; *Baker, supra.* Where is the prejudice here? I find none.

Our standard of review does not permit us to presume that a trial court erred. Be-

cause we review only for an abuse of discretion, *Captain & Co. v. Towne,* (1980) Ind. App., 404 N.E.2d 1159; *Holmes v. Rushville Production Credit A'ssn.,* (1976) 170 Ind. App. 509, 357 N.E.2d 734, *trans. denied,* we should look beyond the findings and affirm the trial court's decision if it is sustainable upon any valid legal theory. *Thornton v. Pender,* (1978) 268 Ind. 540, 377 N.E.2d 613; *D.R.S. v. R.S.H.,* (1980) Ind.App., 412 N.E.2d 1257. Because the parents did meet their burden for authorization of P.S.'s sterilization, the judgment should be affirmed and the trial court directed to issue an order of authorization.

It is slow motion justice indeed, with all its attendant evils, to reverse the judgment denying the injunction and thereby require the parents to relitigate a question that has been fully tried.

---

2. "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."